**Norman M. LITTELL, Appellant,**

v.

**Rogers C. B. MORTON, the Secretary of the Interior of the United States, Appellee.**

**No. 15208.**

United States Court of Appeals, Fourth Circuit.

Argued May 3, 1971.

Decided July 14, 1971.

Francis B. Delehanty, Jr., New York City (Corbin, Bennett & Delehanty, New York City, and Peter Parker, White, Page & Lentz, Baltimore, Md., on brief), for appellant.

Eva R. Datz, Atty., Dept. of Justice (Shiro Kashiwa, Asst. Atty. Gen., Herbert Pittle, George R. Hyde, Attys., Dept. of Justice, and George Beall, U. S. Atty., and James Anderson, Asst. U. S. Atty., on brief), for appellee.

Before BRYAN, WINTER and BUTZNER, Circuit Judges.

WINTER, Circuit Judge:

This case involves close questions of application of the doctrine of sovereign immunity and permissible judicial review under the Administrative Procedure Act, 5 U.S.C.A. §§ 701, *et seq.* They are raised by litigation instituted by Norman M. Littell, Esq., a member of the bar, who was formerly counsel for the Navajo Tribe of Indians. Littell sought judicial review by mandamus of a determination of a previous Secretary of the Interior disallowing his claims for compensation for professional services rendered to the Tribe. The district court concluded that it lacked jurisdiction under the doctrine of sovereign immunity and, alternatively, that the Secretary, in disapproving Littell's claim, exercised a discretionary power not subject to review under the APA by application for mandamus. We conclude otherwise. We reverse the order dismissing the action and remand it for trial.

I

Littell's services as counsel were performed under a written contract, which was renewed and modified from time to time. He acted as general counsel, for which he received a fixed annual retainer, and he also acted as claims counsel. As claims counsel he was to be paid a contingent fee based upon an agreed percentage of any moneys or the value of any lands which he recovered for the Tribe in actions against the United States Government. To assist him in performing his function as general counsel, Littell was provided with legal assistants paid by the Tribe, but the contract explicitly provided that the legal assistants paid by the Tribe were not to participate in claims work. Any associates of Littell who worked on claims cases were to be paid by Littell personally. The contract, its renewals and modifications were all routinely approved by the Secretary pursuant to 25 U.S.C.A. § 81.

After the contract and its various renewals had been in existence for over sixteen years, the Secretary notified Littell, on November 1, 1963, that his contract *as general counsel* would be terminated effective December 1, 1963, unless Littell adduced evidence refuting specific charges that he had been guilty of misconduct in his relations with the Tribe. Although afforded an opportunity to present his defense to the Secretary administratively, Littell chose to institute an action to enjoin the Secretary from terminating the contract. At first Littell obtained a preliminary injunction restraining the Secretary from terminating the contract, and the order was affirmed on appeal. Udall v. Littell, 119 U.S.App.D.C. 197, 338 F.2d 537 (1964). After trial on the merits, the district court made the injunction permanent, but on appeal this order was reversed, and the prayer for relief dismissed. Udall v. Littell, 125 U.S.App.D.C. 89, 366 F.2d 668 (1966), cert. den., 385 U.S. 1007, 87 S.Ct. 713, 17 L.Ed.2d 545, reh. den., 386 U.S. 939, 87 S.Ct. 952, 17 L.Ed. 2d 812 (1967). In the second appeal, the Court of Appeals concluded that Littell had used Tribal staff attorneys on claims cases in violation of the contract and that the breach constituted adequate grounds for cancelling his contract as general counsel. 366 F.2d at 677.

Thereafter, Littell filed a claim for compensation with the Secretary. He sought payment for services as general counsel for the period prior to the final determination of his litigation with the Secretary, and he sought his contingent fee with respect to five claims cases in which he had allegedly obtained substantial benefits for the Tribe. The Secretary denied his claim for payment for services as general counsel, ruling that notwithstanding that termination of the contract by the Secretary had been enjoined for a substantial period of time, the effective date of termination was December 1, 1963, so that Littell was not entitled to payment for services rendered thereafter. Littell's claims for compensation for claims cases were also rejected for a variety of reasons. First, the Secretary determined that three of the

cases were not claims cases, so that Littell was not entitled to be paid a contingent fee for his services in regard to them but, rather, was obligated to handle them in consideration of his fixed annual retainer. The fourth case was deemed a claims case but payment was denied on the ground that Littell had breached his fiduciary duty to the Tribe and, hence, had forfeited his right to a fee. The same position was taken with respect to the fifth case, but, in addition, at the time of the determination, the case was still pending; and its lack of final resolution was asserted as reason not to approve payment since the fee had not yet been earned. Apparently, however, that case has now been concluded, resulting in a substantial recovery for the Tribe. Navajo Tribe v. United States, 23 Ind.Cl.Comm. 277.

■ Littell then sued the Secretary in the district court asserting jurisdiction under 28 U.S.C.A. §§ 1331 and 1391 (e). Since special statutory provisions to review the Secretary's determination do not exist, mandamus was sufficient to obtain judicial review of the Secretary's determination under the APA, 5 U.S.C.A. § 703, if the APA is otherwise applicable and if suit is not barred by sovereign immunity.

## II

We consider first if the APA is applicable, because if it is not, manifestly, we need not consider the question of sovereign immunity.

The problem of the applicability of the APA arises because, by its terms, the APA does not apply to "agency action * * * committed to agency discretion by law." 5 U.S.C.A. § 701(a) (2). In rejecting Littell's claims for compensation, the Secretary was acting under the authority vested in him by 25 U.S.C.A. § 82 to approve payments for services to Indians. The text of § 82 is:

No money shall be paid to any agent or attorney by an officer of the United States under any such contract or agreement, other than the fees due

him for services rendered thereunder; but the moneys due the tribe, Indian or Indians, as the case may be, shall be paid by the United States, through its own officers or agents, to the party or parties entitled thereto; and no money or thing shall be paid to any person for services under such contract or agreement, until such person shall have first filed with the Commissioner of Indian Affairs a sworn statement, showing each particular act of service under the contract, giving date and fact in detail, and *the Secretary of the Interior and Commissioner of Indian Affairs shall determine* therefrom whether, *in their judgment,* such contract or agreement has been complied with or fulfilled; if so, the same may be paid, and, if not, it shall be paid in proportion to the services rendered under the contract. (emphasis supplied.)

While nothing in § 82, or in any other statute relating to Indian affairs, explicitly precludes judicial review of a decision denying compensation under § 82, the argument of the Secretary is that since he and the Commissioner of Indian Affairs shall determine whether, *"in their judgment,"* Littell is entitled to compensation for professional services, their determination is not subject to judicial review under the APA.

Although § 10(a) renders the APA inapplicable to "agency action * * * committed to agency discretion by law," § 10(e), defining the scope of judicial review, directs a reviewing court to hold unlawful and set aside agency action found to be "arbitrary, capricious, *an abuse of discretion* or otherwise not in accordance with law" (emphasis supplied), as well as that which is unconstitutional, in excess of statutory jurisdiction and, in certain instances, not supported by substantial evidence. 5 U.S.C.A. § 706. How to reconcile the withdrawal from judicial scrutiny of discretionary agency action in § 10(a) with the mandatory judicial review for abuse of discretion in § 10(e) has been the subject of sharp dispute.

■ Professor Davis has argued that these two sections are reconciled by saying that whenever a decision is committed to agency discretion by law, then a reviewing court can afford no review, not even for abuse of discretion. 4 K. Davis, Administrative Law Treatise, § 28.16 at 80 (1958). This view has also been adopted by other commentators. See, e. g., Saferstein, Nonreviewability: A functional Analysis of "Committed to Agency Discretion," 82 Harv.L.Rev. 367 (1968). On the other hand, Professor Jaffe has argued that § 10(e) permits a limited review to determine whether the agency has exercised its discretion within permissible bounds. L. Jaffe, Judicial Control of Administrative Action 359 (1965). This view in turn has its other supporters. See, e. g., Berger, Administrative Arbitrariness: A Synthesis, 78 Yale L.J. 965 (1969). While the controversy is far from settled, we prefer the latter rationale. In the first place, it is supported by the legislative history of the APA, as is demonstrated by Berger in his article in the Yale Law Journal. He points out that the leading Senate proponent of the APA, Chairman McCarran, said that "the thought uppermost in presenting this bill is that where an agency without authority or by caprice makes a decision, then it is subject to review." Senator McCarran further stated that "[i]t must not be an arbitrary discretion. It must be a judicial discretion; it must be a discretion based on sound reasoning." 78 Yale L.J. at 972. (citing S.Doc.No.248, at 311).

Two Courts of Appeals have expressly adopted the Jaffe rationale. Scanwell Laboratories, Inc. v. Shaffer, 137 U.S. App.D.C. 371, 424 F.2d 859, 874 (1970); Wong Wing Hang v. Immigration & Naturalization Service, 360 F.2d 715, 718 (2 Cir. 1966). See also, Velasco v. Immigration & Naturalization Service, 386 F.2d 283, 285 (7 Cir. 1967), cert. den., 393 U.S. 867, 89 S.Ct. 153, 21 L.Ed.2d 136 (1968). At least one Circuit has adopted Professor Davis' rationale. Ferry v. Udall, 336 F.2d 706, 712 (9 Cir.

1964), cert. den., 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965). It is difficult to be sure how many other courts prefer Professor Davis' rationale, as most courts do not directly face the issue; often they say that they cannot review and yet proceed to discuss the merits and find that there is no evidence of an abuse of discretion. Significantly, the Supreme Court has not been tolerant of agency action which it deemed to be an abuse of the discretion granted by Congress, even where the agency is vested with broad discretion. For example, in Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), in dealing with a Selective Service Board's refusal to reopen a registrant's classification, the Court said: "Though the language of 32 C.F.R. § 1625.2 is permissive, it does not follow that a board may arbitrarily refuse to reopen a registrant's classification." 398 U.S. at 415, 90 S.Ct. at 1770.

■ Thus, we conclude that, while § 82 commits the decision to deny compensation to an Indian attorney to the discretion of the Secretary, the APA provides limited judicial review to determine if there was an abuse of that discretion. In defining the scope of this limited review, we would adopt the formulation of Judge Friendly in Wong Wing Hang v. Immigration & Naturalization Service, supra. Thus, the Secretary's decision here would be an abuse of discretion "if it were made without a rational explanation, inexplicably departed from established policies, or rested * * * on other 'considerations that Congress could not have intended to make relevant.'" 360 F.2d at 719 (citations omitted).

III

We turn then to the question of whether the doctrine of sovereign immunity precludes the application of the APA.

It must be recognized at the outset that an effort to establish logical consistency in the decisions dealing with sovereign immunity is bound to be frus-

trating. The authorities are not reconcilable, and there are conceptual conflicts in the various holdings with which an intermediate appellate court must grapple. Our task is magnified because we have been unable to find any case in which the Supreme Court has sought to reconcile the notion of sovereign immunity with the fundamental concept of the APA that a person adversely affected by administrative action is presumptively entitled to judicial review of its correctness.

Two Courts of Appeals have sought to resolve the problem by holding that the APA, where applicable, constitutes a waiver by the government of sovereign immunity. Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d at 873–874; Kletschka v. Driver, 411 F.2d 436, 445 (2 Cir. 1969). Earlier this was the position of the Ninth Circuit, Adams v. Witmer, 271 F.2d 29 (9 Cir. 1958), but it was subsequently rejected in State of Washington v. Udall, 417 F.2d 1310 (9 Cir. 1969). The Fifth Circuit took this view also in Estrada v. Ahrens, 296 F.2d 690 (5 Cir. 1961), but apparently altered it in Colson v. Hickel, 428 F.2d 1046 (5 Cir. 1970), cert. den., Colson v. Morton, 401 U.S. 911, 91 S.Ct. 875, 27 L.Ed.2d 810 (1971). On the other hand, at least four have now specifically rejected the waiver theory. State of Washington v. Udall, 417 F.2d at 1320 (9 Cir. 1969); Motah v. United States, 402 F.2d 1, 2 (10 Cir. 1968); Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe, 370 F.2d 529, 532 (8 Cir. 1967); Cyrus v. United States, 226 F.2d 416 (1 Cir. 1955). The waiver theory is attractive for several reasons. First, it possesses the virtues of simplicity and ease of application. Secondly, the exceptions to judicial review found in § 10(a) of the APA (5 U.S.C.A. § 701(a)) to a large degree protect the policy reasons underlying the doctrine of sovereign immunity. In other words, where sovereign immunity would normally seem appropriate, the "statutes preclude judicial review" and "committed to agency discretion by law" exceptions would prevent or limit judicial review under the APA.

Despite the attractiveness of the waiver theory, we do not consider ourselves free to adopt it. The judicial review provisions of the APA were adopted in 1946 in substantially the same form as exist today. Yet between 1946 and 1963, the Supreme Court decided at least five cases dealing with attempts to review administrative decisions in which sovereign immunity was applied. Hawaii v. Gordon, 373 U.S. 57, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); Fresno v. California, 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed. 2d 28 (1963); Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Malone v. Bowdoin, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In none of these cases was mention made of the judicial review provisions of the APA, although, because they dealt with final administrative decisions, some discussion of the APA would have seemed to have been appropriate. In still another case, Blackmar v. Guerre, 342 U.S. 512, 516, 72 S.Ct. 410, 96 L.Ed. 534 (1952), there is the following dictum "[s]till less is the Act [APA] to be deemed an implied waiver of all governmental immunity from suit." As a source of further confusion, the Supreme Court has recently decided a number of cases dealing with final administrative decisions in which judicial review was permitted under the APA without any mention of the doctrine of sovereign immunity. E. g., Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Association of Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Perhaps all these cases may be reconciled with the waiver theory by saying that in each of the sovereign immunity cases, review was not available under the APA; and

in each of the APA cases, that sovereign immunity was not applicable. But the fact remains that the Supreme Court has made no such attempt at reconciliation. As Mr. Justice Stewart said in Malone v. Bowdoin, *supra:* "While it is possible to differentiate many of these cases upon their individual facts, it is fair to say that to reconcile completely all the decisions of the Court in this field prior to 1949 would be a Procrustean task." 369 U.S. at 646, 82 S.Ct. at 983. That "Procrustean task," as we have mentioned, still remains to be accomplished.

▅▅▅ Thus, we are constrained to concede that the doctrine of sovereign immunity applies independently of the judicial review provisions of APA. A court may thus be compelled under some circumstances to dismiss a case on the ground of sovereign immunity even though judicial review would seem to be available under the APA. The problem, of course, is to decide in what sorts of circumstances such a result will obtain. In this regard, we accept the formulation of the Ninth Circuit, which directly faced the identical issue in State of Washington v. Udall, *supra:* "In any case wherein the immunity doctrine is so transcending as to require dismissal of the suit, the Act [APA] does not provide for Administrative Review." 417 F.2d at 1320.

Therefore, having decided that the APA does provide for limited judicial review here, we are left to consider two questions: First, does the doctrine of sovereign immunity appear applicable? And secondly, if sovereign immunity appears applicable, are the reasons for its application so compelling as to require dismissal of the case despite the APA?

▅▅▅ It appears to us that the doctrine of sovereign immunity, as formulated by the Supreme Court, is applicable here. In Dugan v. Rank, *supra*, the Supreme Court defined the general circumstances in which the doctrine is to be applied:

The general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," * * * or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act." (citations omitted.)

372 U.S. at 620, 83 S.Ct. at 1006. Here, Littell is seeking to compel the Secretary to act and to require the government, as well as the Navajo Tribe, to pay money. It would be hard to imagine a case more literally within the general rule.

The Court in *Dugan,* however, went on to describe exceptions to this general rule: "Those exceptions are (1) action by officers beyond their statutory powers and (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void." 372 U.S. at 621–622, 83 S.Ct. at 1007. It is clear here that the Secretary's actions were within the authority conferred on him by § 82, and it is extremely doubtful that the Secretary's exercise of this authority was unconstitutional. If Littell's allegation that the Secretary arbitrarily denied him compensation under the contract is true, then the government would have deprived Littell of property without due process in violation of the Fifth Amendment, so that it might be argued that the second exception to the sovereign immunity doctrine is operative. However, that argument has been precluded by the Supreme Court by its decision in Larson v. Domestic and Foreign Commerce Corp., *supra.* In that case the plaintiff had a contract with the War Assets Administration to buy surplus coal. After unilaterally determining that the plaintiff had breached the contract, the Administration contracted to sell the coal to another company. The plaintiff sought to enjoin this sale on the grounds that it had not breached the first contract. The Supreme Court dismissed the suit on the basis of sovereign immunity, thus apparently ending any

Fifth Amendment argument based on contract rights.

We do not think, however, that the underlying policies of the doctrine of sovereign immunity are so strong here as to require dismissal of this suit. In the first place, the doctrine of sovereign immunity is presently under attack from many sides. In his treatise, Professor Davis advocates its complete abolition. K. Davis, Administrative Law Treatise, §§ 27.00–27.00–8 (Supp.1970). We consider his arguments highly persuasive. The American Bar Association in 1969 adopted a proposal to amend the APA to eliminate sovereign immunity where the Act is otherwise applicable. See K. Davis, *supra*, § 27.00–8, at 916. Against a weakening of general faith in the validity of the doctrine, we are persuaded that the justifications for the doctrine are not compelling here. In Larson v. Domestic and Foreign Commerce Corp., *supra*, the Court articulated the doctrine's rationale:

> There are the strongest reasons of public policy for the rule that such relief cannot be had against the sovereign. The Government, as representative of the community as a whole, cannot be stopped in its tracks by any plaintiff who presents a disputed question of property or contract right. As was early recognized, "the interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief. * * *" (footnote omitted.)

337 U.S. at 704, 69 S.Ct. at 1468. The rationale for sovereign immunity essentially boils down to substantial bothersome interference with the operation of government. It can be said with some justification that both Congress, through the enactment of the APA, and the courts, through liberal application of the APA and silence as to sovereign immunity, have largely rejected this rationale.

However, to the extent that it is still viable, it is only tangentially present here. In no way will this case cause the Department of the Interior to be "stopped in its tracks" in its supervision of Indian affairs. Littell has been replaced by a new attorney to represent the Navajos; representation of the Tribe continues uninterruptedly. The issue involved here is strictly between the government, the Tribe and Littell, and there is no premium on a quick administrative decision which judicial review would prevent. This is not a case where an important government project is halted pending litigation, although the Supreme Court does not seem inclined to prevent judicial review even when this is the case. See Citizens to Preserve Overton Park v. Volpe, *supra*. The sovereign immunity of the Tribe is not seriously impugned. If in fact Littell effected substantial recoveries for it, it was benefited. Certainly it contracted with knowledge of the statutes and approval of the Secretary, to pay a not excessive contingent fee for professional services which advanced its interests. We are not inclined to apply sovereign immunity to provide the Tribe with free legal services in the face of an allegation that payment has been refused arbitrarily.

Finally, we are constrained to add that this would appear to be a most appropriate case for judicial review. The essential issues in this case are ones of contract interpretation and appropriate remedies if breach of contract is established. There is certainly no compelling agency expertise in this area of the law. These are questions always considered to have been within the special competence of the courts. The notion that the government can administratively give a unilateral and final interpretation to a contract under which it may be obligated to pay, and thereby avoid payment, is one that should not be encouraged.

Reversed and remanded.