**Jack PHILLIPS, and Larry Gleason, on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**Leslie DAWSON et al., Defendants.**

**Civ. A. No. C 75–0011 L(A).**

United States District Court,
W. D. Kentucky,
Louisville Division.

April 16, 1975.

James G. Wilson, Legal Aid Society of Louisville, Lloyd C. Anderson, Lawrence S. Elswit, Louisville, Ky., for plaintiffs.

Paul Cupp, Frankfort, Ky., George J. Long, U. S. Atty., Louisville, Ky., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ALLEN, District Judge.

This action is submitted to the Court for the entry of findings of fact and conclusions of law on the motion of the plaintiffs for a preliminary injunction and on the motion of Peter Brennan, Secretary of Labor, to dismiss.

The named plaintiffs represent a class composed of those persons in Kentucky who have been unemployed, and who have applied for unemployment insurance benefits in Kentucky, and who have not received payment of said benefits within 14 days after their application has been filed. The complaint requests the Court to enter a judgment declaring that the delay of payment of unemployment insurance benefits beyond 14 days is inconsistent with the Social Security Act and the provisions of 42 U.S.C. § 503 et seq., and also requests the Court to enter injunctive relief on the grounds of violations of the Fifth and Fourteenth Amendments to the Constitution. The complaint also asks the Court to enjoin the defendants from withholding from the plaintiffs all unemployment insurance benefits wrongfully withheld and to order immediate payment of such benefits.

Also, the complaint asks that the Court order the defendants to use all means necessary to comply with the intent of a final order compelling timely process and distribution of unemployment insurance benefits, including the hiring of more personnel and the publication and use of new regulations if necessary.

The evidence was developed at two hearings held on January 13, 1975 and February 10, 1975. The manner in which the State of Kentucky handles unemployment insurance claims is basically as follows:

First, the applicant comes to a local office and signs an application for unemployment insurance benefits. This

usually occurs a day or two after he or she has become unemployed. At that time he or she is told to report back to the local office for an interview, which is usually scheduled within a period of from 9 to 14 days after the application is received. If there is no objection made by the employer to the claim, the local office then approves the claim, but even after approval, it requires approximately 3 more weeks from the date of interview until the day when the unemployed worker receives the first check. A great deal of this delay is due to cumbersome procedures whereby the unemployment office in Louisville has to forward the approval of payment to the office in Frankfort which, in turn, must certify the payment to the Department of Treasury which, in turn, makes out the check. The process is described in detail at pp. 52 and 53 of the first hearing by Mr. Lindsay Hughes, who stated, in substance, that the entire process would require, at the least, 11 days after approval and at the most 19 days.

Mr. Hughes went on to elaborate that if everything was perfect, the applicant could conceivably receive a check within 14 days from the Saturday of the week in which he filed his claim.

Further testimony establishes that prior to the great wave of unemployment applications which began to flood the offices of the state defendants in the late fall and early winter of 1974–75, the defendants were told by the agents of the Secretary of Labor that they were only processing 56 percent of the applications within the time limits which were deemed to be desirable by the Secretary.

It should be added that, in the case of General Electric and presumably other large manufacturers who have had substantial layoffs during the past few months, another scheme of processing the claims has been initiated. Under this scheme, there is furnished to the applicant at General Electric a mail packet, including the unemployment application forms, with directions to mail the executed forms to the unemployment office. However, when some 2,500 persons were laid off at General Electric on January 10, 1975, the applicants were told that they should not mail their applications to the unemployment office until January 26, 1975. The date upon which the forms were distributed was January 13th, and the packets which were given to the laid off employees consisted of five envelopes, one of which the applicant was to send in every two weeks. See pp. 39–40 Tr. #2.

As to applicants who give notice to the state defendants that they were discharged or quit, the local office follows a different procedure. At the first interview with the applicant, they call the employer to determine whether the applicant was laid off, discharged or quit. Even if they receive no protest from the employer at this stage of the proceedings, they do not approve the applicant's claim, but make a further investigation. See pp. 56, 64, 66, and 82 Tr. # 2.

On many occasions prior to the great wave of layoffs, this was done by the local office contacting the employer by telephone and, with his permission, taped a recorded statement. However, in recent months, letters have been sent and the contact with the employer has not been made at the time of interview. After a letter is sent, the employer is given 7 days from the date of mailing to respond.

Statistics introduced by the defendants showed that 93 percent of all claims present no issues of fact, and of the 7 percent where it initially appeared that the employee was not eligible for unemployment insurance benefits 10 percent of these subsequently developed no issue.

It was shown as to the individual plaintiff that Jackie Phillips filed an application on November 5, 1974 stating that he was discharged. He returned November 19, 1974 for the interview. His employer had not responded to the first contact, nor had the defendants made what is known as a monetary determination, which is a calculation as to

the amount of benefit which would be owing if the applicant is eligible. Even though the employer had defaulted, an investigation was commenced and no determination was made until January 3, 1975, at which time the employer stated that Phillips had been laid off. Three weeks after January 3, 1975, Phillips received his checks.

Another applicant, Keith O'Neil, filed a claim in early November and received his check in late January. Lenert Elzy filed November 17th, but had not received any money as of February 10th.

The backlog of claims in Louisville had gotten as large as 600–700 as of December 30th, but by February 10th the backlog was reduced to 200–300 cases. These represent cases which are in issue.

The funds which are paid to the applicants are contributed by employers. The administrative costs of the program are paid by the United States, but the United States will not approve of increases in personnel with which to meet the greatly expanded caseloads unless the state agencies make a convincing showing of need for such personnel during the preceding quarter. Since September, 1974, the caseload has more than doubled. The defendants, however, were unable to double their personnel until January of 1975, and this time lag accounts in considerable measure for the delays which have been suffered by plaintiffs and the members of their class.

Title 42 U.S.C. § 503(a)(1) provides in part:

"(a) The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for —

"(1) Such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary of Labor shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Secretary of Labor to be *reasonably calculated to insure full payment of unemployment compensation when due.*" (Emphasis added.)

The leading case construing this section is that of California Human Resources Department v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971) affirming 317 F.Supp. 875 (N. D.Cal.1970). In *Java* the Supreme Court stated that the objective of Congress was to provide a substitute for wages lost during a period of unemployment not the fault of the employee, and that while probably no program could be devised to make insurance payments available precisely on the nearest payday following the termination, that this must be regarded as what Congress was trying to accomplish to the extent that it was administratively feasible. See 402 U.S. at p. 130, 91 S.Ct. 1347.

On p. 131, 91 S.Ct. 1347, of *Java*, Mr. Chief Justice Burger referred to the longest waiting period entering into the estimates as to when benefits could be paid was four weeks, indicating an intent that payments should begin promptly after the expiration of a short waiting period. The court went on to hold that in cases which were in issue, the words "when due" found in the Act mean at the earliest stage of unemployment that payments are administratively feasible after giving the worker and the employer an opportunity to be heard.

A specific holding in *Java* was that a California procedure which suspended payments for a median period of seven weeks pending appeal after an initial determination of eligibility had been made was not reasonably calculated to insure full payment of unemployment compensation when due. The court thereupon enjoined a California statute which automatically stopped payments pending

the hearing, on the grounds that it was inconsistent with 42 U.S.C. § 503(a)(1), but refused to rule on the due process grounds which had been reached and found determinative by the three-judge district court.

In the instant case, there are four clearly defined areas in which the state defendants have failed to follow the intent of 42 U.S.C. § 503(a)(1) and the spirit of the holding of the Supreme Court in *Java*. The first instance is the failure of the state administrative agency to grant a preliminary interview to the applicant within ten days after he or she is first laid off. The present practice is to grant the interview within nine to fourteen days, but the only requirement that the Kentucky Revised Statutes make is that the worker be laid off from work for at least seven consecutive days.

■ The Court observes as to the workers whose layoff would start on Friday, Saturday or Sunday, it would not be feasible to grant interviews for a period varying from eight to ten days, since the state agencies would be closed on Saturday and Sunday and hence the determination that the worker had been unemployed for at least seven consecutive days would not be timely made within the seven days. However, the Court sees no reason why the maximum time for the granting of an interview should exceed ten days after the filing of an application, and in those cases where the layoffs start in the early part of the week, the interviews should be granted on the eighth day.

■ The same reasoning applies to the processing of the packets received through the mail. There is no sound reason why the state defendants cannot process these claims on the eighth day following their mailing, unless the layoff occurs on Friday, Saturday or Sunday, in which case the processing should be done within ten days.

■ Another practice followed by the state defendants that is clearly in conflict with the holding of *Java* is that of requiring an investigation in those cases where the state agency has called the employer and received an indication from him that he does not wish to contest the eligibility of the applicant. Mr. Chief Justice Burger uses the following words to describe this practice, see 402 U.S. at p. 134, 91 S.Ct. at p. 1355:

"It would frustrate one of the Act's basic purposes—providing a 'substitute' for wages—to permit an employer to ignore the initial interview or fail to assert and document a claimed defense, and then effectuate cessation of payments by asserting a defense to the claim by way of appeal. If the employer fails to present any evidence, he has in effect defaulted, and neither he nor the State can with justification complain if, on a *prima facie* showing, benefits are allowed. If the employer's defenses are not accepted and the claim is allowed, that also constitutes a determination that the benefits are 'due'."

■ ■ There is, therefore, no reason why the state defendants cannot, at the time they receive an application from the claimant which causes concern in their minds as to the eligibility of the claim, notify the employer either in writing or by telephone of the date at which an interview will be held with the applicant, and of the right of the employer to protest the applicant's eligibility at that time. The form of notice preferably should be a postcard or letter which advises the employer that if he fails to present any evidence upon the date of interview, he has, in effect, defaulted and benefits will be allowed.

■ The fourth area involves the failure of the state defendants to process payment of those claims which have been approved within fourteen days after the date of application. As noted by the Court the optimum times seems to be fourteen days and in many instances it is running as much as nineteen to twenty-one days, making a total of five weeks from the date of applica-

tion to the date of payment for applicants as to whom there is no contest of eligibility.

This falls short of the intent of Congress, that to the extent that it is administratively feasible, insurance payments should be made available on the nearest payday following the termination. The Court believes that it is imminently feasible now for the agency in all cases where no contest has been made by the employer to have payment in the hands of the applicant within 24 days after the date of application. This can be done by following the reforms set out hereinabove.

With respect to those applicants whose claims are put in issue by employers, and who are held by the claims examiner to be entitled to the payment of benefits, *Java* holds that such benefits must be paid pending appeal where the median period of appeal is seven weeks. In the instant case, no evidence was produced as to the amount of time that would be consumed by an appeal from the determination of the hearing examiner, and the Court notes that, in addition to the administrative appeal, the parties are entitled to a judicial review. The Court does not believe that it is appropriate to enter any ruling at this time with respect to such cases, since no actual evidence was introduced by any of the named plaintiffs which concerned appeals from decisions by the examiners.

Much time has been spent by plaintiffs and the federal defendant, Peter Brennan, in arguing the question of sovereign immunity. In *Java*, Mr. Chief Justice Burger stated in footnote 19 at p. 135, 91 S.Ct. at p. 1356, in part as follows:

"In disposing of the prayer for a permanent injunction, it may be appropriate to join the Secretary of Labor as a party in order that complete relief may be accorded."

A learned discussion of the doctrine of sovereign immunity and of the scope of judicial review under the APA, 5 U.S.C. § 701 et seq., appears in Littell v. Morton, 445 F.2d 1207 (4th Cir. 1971). It is pointed out there "that an effort to establish logical consistency in the decisions dealing with sovereign immunity is bound to be frustrating." The authorities are not reconcilable and the task is magnified because the Supreme Court has not yet had occasion to reconcile the motion of sovereign immunity with the fundamental concept of the APA, that a person adversely affected by administrative action is presumptively entitled to judicial review of its correctness. See Littell v. Morton, *supra*, at pp. 1211, 1212.

*Littell* finally reaches the conclusion that the doctrine of sovereign immunity applies independent of the judicial review provisions of APA, but then goes on to hold that the doctrine should only be applied where the judgment "would expend itself on the public treasury or domain, or interfere with the public administration . . . or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act'." See Dugan v. Rank, 372 U.S. 609, at p. 620, 83 S.Ct. 999, at p. 1006, 10 L.Ed.2d 15 (1963). However, in *Dugan* two exceptions were set out to the general rule, one of which was action by officers beyond their statutory powers, and the second was the exercise of powers within the scope of their authority in a manner which is constitutionally void.

As the Fourth Circuit points out in Littell v. Morton, *supra*, the doctrine of sovereign immunity is being eroded, and the rationale for its use essentially boils down to substantial bothersome interference with the operation of Government. See Larson v. Domestic & Foreign Corporation, 337 U.S. 682 at p. 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

In the case at bar, the statutes involving the Secretary of Labor, to wit: 42 U.S.C. § 501 et seq., and particularly 42 U.S.C. § 503, call upon him to stop payment to the states if he finds that they fail to meet the requirements set out in

42 U.S.C. § 503. The words directing him to stop payment are mandatory, and are not couched in terms of "may" or in terms of "shall". Therefore, it would seem that the mandate under the statute is clear and it is not left to his discretion within the meaning of 5 U.S.C. § 701(a)(2).

■ However, while the Court is of the opinion that the Secretary should not ·be dismissed as a party on the basis of sovereign immunity, the Court does not believe at the present time that it would be appropriate to award any relief against him. Complete relief may be afforded to the plaintiffs in the form of the injunction which will be entered against the state defendants and the only relief which this Court could require the Secretary to grant at this time would be counter-productive, since it would result· in a withholding of federal funds from the state agency, hence the drying up of benefits for the plaintiffs and members of their class.

There, the Court holds that the motion to dismiss the Secretary as a party is overruled, but that since no final judgment has been entered, he will remain in the action as a party.

Finally, the Court believes that some monitoring of the preliminary injunction is appropriate. See Parham v. Southwestern Bell Telephone Company, 433 F.2d 421 (8th Cir. 1970). It is thought that the state defendants should furnish the Court and the parties with a report to be filed by July 10, 1975, showing the results of its operations under the Court's preliminary injunction. The report should specify the number of applications received for benefits in the months of May and June, 1975, the number of applications as to which no contest was made by the employer, and the amount of time required to process the applications and forward the benefits to the applicants. The report should specifically show any occasions on which the time to process the applications and mail the benefit checks to the applicants took more than 24 days from date of application. An adequate explanation should accompany each such instance.

A preliminary injunction in accordance with these findings of fact and conclusions of law has been entered this day.

## PRELIMINARY INJUNCTION

The Court, having entered its findings of fact and conclusions of law, and being fully advised in the premises,

It is ordered and adjudged that the defendants herein, to wit: Leslie Dawson, Gail S. Huecker, Michael Morriaty, Daniel Tierney and Mary Draughn, their successors, officers, agents, servants, employees and attorneys, and all other persons in privity with them, are hereby enjoined and directed to process all unemployment benefit applications, which are uncontested, in such a manner that payment be mailed or delivered personally to the worker within 24 days after the initial application for benefits has been filed.

It is further ordered and adjudged that the state defendants whose names are set out in the preceding paragraph, and their successors, agents and all other persons in privity· with them, file with the Court on or before July 10, 1975, a report reciting the number of uncontested initial applications for unemployment benefits which were received within the months of May and June, 1975, and that said report include statistics showing the average number of days required to process such applications from their commencement until the date of payment of the first benefit check, and also recite all instances in which the time to complete the payment of the first check from the time of application has taken more than 24 days, together with an explanation of the reasons for the failure to comply with the 24 day provision in each instance.

It is further ordered and adjudged that the motion of the Secretary of Labor and the federal defendants to dismiss is overruled but that no relief is awarded against them at this time.

It is further ordered that this preliminary injunction shall apply prospectively as to all persons who shall file for unemployment benefits and whose claims shall be uncontested commencing with the date of entry of this preliminary injunction.