599 F.2d 588
 24 Wage & Hour Cas. (BN 137, 86 Lab.Cas. P 33,784
 COMMONWEALTH OF VIRGINIA, ex rel. COMMISSIONER, VIRGINIA
DEPARTMENT OF HIGHWAYS AND TRANSPORTATION,
Plaintiff-Appellant,
v.
Ray MARSHALL, Secretary, United States Department of Labor,
Defendant-Appellee,
and
Washington Building and Construction Trades Council,
Defendant-Intervenor-Appellee,
American Road and Transportation Builders Association,
Associated Builders and Contractors, Inc., and
Associated General Contractors of
America, Inc., Amici Curiae.
 No. 78-1885.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 2, 1979.
Decided May 30, 1979.
 
 Walter A. McFarlane, Deputy Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen., John J. Beall, Jr., John M. McCarthy and Debra J. Prillaman, Asst. Attys. Gen., Richmond, Va., with him on the briefs), for plaintiff-appellant.
 Mauricio A. Flores, Federal Programs Branch, Dept. of Justice, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., Ronald R. Glancz, App. Staff, Dept. of Justice, Carin Ann Clauss, Sol. of Labor, Ronald G. Whiting, Associate Sol. and Gail V. Coleman, Atty., Dept. of Labor, Washington, D. C., with him on the brief), for defendant-appellee.
 Terry R. Yellig (Thomas X. Dunn and Sherman, Dunn, Cohen & Leifer, Washington, D. C., with him on the brief), for defendant-intervenor-appellee.
 Robert J. Hickey, Peter G. Kilgore and Kirlin, Campbell & Keating, Washington, D. C., submitted on the brief for amici curiae.
 Before BREITENSTEIN*, RUSSELL and WIDENER, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This appeal of the Commonwealth of Virginia challenges a wage rate determination by the Secretary of Labor made pursuant to the Federal-Aid Highway Act, 23 U.S.C. § 113 and the Davis-Bacon Act, 40 U.S.C. § 276a. The district court decided in favor of the Secretary and dismissed the action. We affirm.
 
 
 2
 Proceeding under the Federal-Aid Highway Act, 23 U.S.C. § 101, et seq., Virginia applied to the Secretary of Transportation for federal funds to construct a 1.69 miles segment of Interstate 66 (I-66) in Fairfax County, Virginia. The Secretary approved the request on the condition that the median of the highway be constructed so that it could readily be used in the future by the Washington Metropolitan Area Transit Authority (Metro) for an extension of its rapid transit rail system. Work on the median area would be completed to the extent that Metro would be able to lay track and build stations with minimum construction expense when the proposed extension was finally approved. The entire I-66 project is financed with 90% Federal Highway Trust Funds and 10% State funds in accordance with 23 U.S.C. § 120(c). The estimate of the entire project cost is $21 million. The median portion constitutes 17.8% Of the total work and $4 million of the total cost.
 
 
 3
 Virginia applied to the Department of Labor for a "project wage determination." See 29 C.F.R. § 1.5(a). On October 11, 1977, the Wage and Hour Division of the Department of Labor issued a wage determination which was effective for 120 days under 29 C.F.R. § 1.7(a)(1). It decided that the median work for the proposed Metro extension was distinct from the highway work and issued separate wage rates for each portion of the project. It reasoned that because the median would ultimately be used as a rail-bed that portion of the project was rail construction which had been consistently characterized as "heavy" as opposed to "highway" construction. The rates for the median work were substantially higher than the rates for the highway work.
 
 
 4
 Virginia then appealed to the Wage Appeals Board, which is authorized to act for the Secretary. 29 C.F.R. § 7.1(d). Virginia asserted that the median work is identical to the highway work in a construction sense and contends that the entire project should have been classified as "highway" construction. After an evidentiary hearing the Wage Appeals Board on March 21, 1978, upheld the Wage and Hour Division in all but one respect. It determined that certain bridge abutments, which would have to be built regardless of the Metro extension, should be classified as "highway" construction.
 
 
 5
 In order not to postpone construction, Virginia split the project into two parts. A contract for substantially all of the highway work has been let and construction is now underway. That contract bases its wage rates on an April 4, 1978, wage determination, because the previous wage determination had expired. A contract for the median work and the remaining highway work is proposed to be let in the fall of 1979. It will require a new wage determination.
 
 
 6
 Virginia brought this action to obtain relief from the Wage Appeals Board's March 21, 1978, decision, WAB Case No. 77-33, App. 226. The district court held that the action was moot because (1) the 120 day effective period of the wage determination had expired, see 29 C.F.R. § 1.7(a)(1), and (2) the split of the project into two parts requires a new wage determination for the contract yet to be let which will present different circumstances from those pertaining to the wage determination now under attack.
 
 
 7
 The court then discussed the reviewability of the action of the Wage Appeals Board and in view of the presumption of reviewability recognized in Littell v. Morton, 4 Cir., 445 F.2d 1207, 1211, proceeded to the merits of the controversy over the decision of the Board. The court then upheld the Board on the merits.
 
 Mootness
 
 8
 Consideration must be given to both the 120-day validity of a wage determination and the splitting of the project. The Secretary admits that administrative and judicial review could not be completed within the 120 day validity period. A new wage determination will be required for that portion of the project not now under contract. In Southern Pacific Terminal Company v. Interstate Commerce Commission, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310, the Court rejected a claim of mootness when the short-term orders of a federal agency were "capable of repetition, yet evading review." Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, says that in the absence of a class action, the statement in Southern Pacific Terminal is limited to a situation in which two elements are combined: (1) action of such short duration as to preclude full litigation before expiration of the action, and (2) reasonable expectation that the same complaining party may be subjected to the same action again. The Secretary concedes that element (1) is present in the case at bar.
 
 
 9
 As to element (2), the Secretary urges that the effect of splitting the project is that when a new wage determination is made for the contract not yet let, different circumstances will be presented. The changed circumstances will not affect the practices and procedures of the Secretary. Virginia's challenge goes to those practices and procedures. For all that appears in the record, Virginia will be subjected to the same practices and procedures when it seeks a new wage determination. A substantial controversy exists over the legality of the Secretary's practices and procedures. See Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 125-126, 94 S.Ct. 1694, 40 L.Ed.2d 1. The controversy is not moot.
 
 Reviewability
 
 10
 The substantive correctness of the wage determination is not subject to judicial review. United States v. Binghamton Construction Co.,347 U.S. 171, 177, 74 S.Ct. 438, 98 L.Ed. 594. Review is limited to due process claims and claims of noncompliance with statutory directives or applicable regulations. See, Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192. Virginia's claims fit into these categories and, hence, federal question jurisdiction under 28 U.S.C. § 1331 is properly invoked.
 
 
 11
 A more difficult question is whether the Secretary's action is reviewable under the standards of the Administrative Procedure Act, APA, 5 U.S.C. § 701, et seq. The APA applies unless review is precluded by statute or action is committed by statute to agency discretion. 5 U.S.C. § 701(a)(1) and (2). The second exception is not material, since this Circuit has held that action committed to agency discretion is nevertheless reviewable under the APA for abuse of discretion. Littell v. Morton, 4 Cir., 445 F.2d 1207, 1210-1211.
 
 
 12
 The Davis-Bacon Act neither expressly provides for, nor expressly precludes, judicial review. The Secretary argues from statutory intent and legislative history that Davis-Bacon impliedly precludes review. This argument depends on his characterization of Virginia's claim as a challenge to the correctness of the wage determination. See, Secretary's Brief at 35. We disagree with the characterization. Virginia challenges the Secretary's practices and procedures. The Act and its history reveal no "clear and convincing" evidence of a Congressional intent to preclude review of these practices and procedures for compliance with constitutional, statutory and procedural requirements. See, Califano v. Sanders, supra, and Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 18 L.Ed.2d 681.
 
 
 13
 Intervenor-Appellee, Washington Building and Trades Council, urges that APA review is precluded because Davis-Bacon is so broad that there is no law to apply. See, Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136. Again we disagree. The mandate of Davis-Bacon is clear. Procedures for compliance with that mandate have been developed through agency regulations and practices and through decisions of the Wage Appeals Board. The legality of the procedures employed here must be determined. There is law to apply in making that determination.
 
 
 14
 We conclude that the APA is applicable and that the Secretary's action must be measured against its standards, 5 U.S.C. § 706(2)(A)-(D). We turn to the merits.
 
 Merits
 
 15
 Section 113 of the Federal-Aid Highway Act, 23 U.S.C. § 113, requires that all laborers and mechanics employed on interstate highway projects be paid wages"not less than those prevailing on the same type of work on similar construction in the immediate locality as determined by the Secretary of Labor in accordance with the * * * Davis-Bacon Act."
 
 
 16
 Section 1 of the Davis-Bacon Act, 40 U.S.C. § 276a provides that
 
 
 17
 "the minimum wages to be paid various classes of laborers and mechanics * * * shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State, in which the work is to be performed * * *."
 
 
 18
 The Secretary has generally classified projects into four categories: "heavy," "highway," "building," and "residential." See Construction Wage Determinations Manual of Operations, App. 72, 73. The classification is not required by the Act or by regulations of the Secretary. It is used for administrative convenience and is based on historical patterns within the construction industry. See Nello L. Teer Company v. United States, Ct.Clms., 348 F.2d 533, 534, 172 Ct.Cl. 255, cert. denied 383 U.S. 934, 86 S.Ct. 1065, 15 L.Ed.2d 852. Where a dispute arises over a classification, the Davis-Bacon Act standard of "projects of a character similar to the contract work," 40 U.S.C. § 276a, must control.
 
 
 19
 Virginia complains that in applying the classification system the Secretary improperly differentiated the median work from the highway work on the basis of ultimate uses. Virginia says that a comparison of the components of the two portions in a construction sense must control.
 
 
 20
 The Virginia argument misconstrues the Davis-Bacon Act. The reference is to projects not to components of projects. See Tennessee Roadbuilders Assoc. v. Marshall, M.D.Tenn., 446 F.Supp. 399, 402. Virginia says that the Secretary's action is contrary to Jefferson County Levees, WAB Case No. 68-1, App. 335. We do not agree. There the Wage Appeals Board held that because inland levees were dissimilar to maritime levees and were similar to local highway construction, the Secretary must consider local highway construction wages. In the instant case the record shows that the median work is similar to other rapid rail transit construction and to rail work in general. The principle of Jefferson County Levees has no application.
 
 
 21
 Nothing in Davis-Bacon precludes the Secretary from issuing separate wage schedules where a project calls for a substantial amount of work in more than one category. This has been the Secretary's practice. See, South Cobb Waste Water Treatment Plant WAB Case No. 76-19, App. 266, and I-66 and Metro, WAB Case No. 77-8, App. 245, 253. Nothing in Davis-Bacon precludes the Secretary from considering functional use in classifying a project. Insofar as functional use is relevant to determining locally prevailing wages, it is a proper consideration. See, Tennessee Roadbuilders Assoc. v. Marshall, supra.
 
 
 22
 The items related to the median are approximately 17% Of the entire project. This is substantial. The fact that some of the components of the work in the median are the same as those in the highway portion is immaterial. The Secretary had a rational basis for classifying the work on the median as rail work requiring heavy construction rates. The median work contemplated the proposed Metro extension and would not have been needed in the absence of the Metro plans. The Secretary has consistently classified rapid rail projects as heavy construction. See, Metro C-7 II, WAB Case No. 71-5, App. 317, and MARTA I, WAB Case No. 75-5, Supp.Dec., App. 284.
 
 
 23
 The action in the case at bar is not inconsistent with a prior case involving similar issues. In I-66 and Metro, WAB Case No. 77-8, App. 245, the Wage Appeals Board held that median work, also done in preparation for a Metro extension, had to be considered highway construction. In deciding the instant dispute the Wage Appeals Board distinguished the earlier case on the grounds that there the work was incidental to the highway construction, it comprised only 8.5% Of the project, and had alternative uses if the Metro extension did not materialize. In addition, none of the construction which was the subject of that decision was included in the items labeled "heavy" in this case. See App. 226-228. The distinctions are reasonable.
 
 
 24
 The fact that federal highway funds are used to pay for the project makes no difference. The Secretary of Transportation approved the request for federal aid subject to Virginia's agreement to provide right-of-way in the median for Metro and to assist Metro "through complete construction of the median to the point where rails could be placed." Secretary's Decision, App. 131, 135.
 
 
 25
 Virginia contends that the Secretary violated 23 U.S.C. § 113(b) in that he did not consult with its Highway Department either in classifying the project or making the wage determination. Section 113(b) requires that the Secretary "consult" and give "due regard" to the information thus obtained. As to classifying the project, the trial court found, and the record shows, that the Wage and Hour Division "did consider" the view of the State Highway Department. So also did the Wage Appeals Board. See, App. 228-229. As the trial court said, " 'due regard' does not mean 'deference.' "
 
 
 26
 The dispute over consultation in making the wage determination is mooted by the expiration of the original wage rate. A new wage determination will be needed before a contract is let for the median work. The Secretary says, Secretary's Br. at 25, that a new survey of heavy construction in the project locality, which has been initiated, includes Metro construction. We assume that any wage determination applicable to the new contract will be made only after appropriate consultation with Virginia.
 
 
 27
 The Secretary's practices and procedures violated no statutory or regulatory requirement and were consistent with prior practices. His classification of the median work as "rail," and his application of heavy construction wage rates, are reasonable and within his authority. The Secretary did not abuse the discretion delegated to him.
 
 
 28
 Although we disagree with the holding of the trial court that the case is moot, we agree with its decision in upholding the action of the Wage Appeals Board. Accordingly the judgment dismissing the action is affirmed.
 
 
 29
 AFFIRMED.
 
 
 
 *
 Of the Tenth Circuit, sitting by designation