WESTINGHOUSE ELECTRIC CORP. and its subsidiary, Fraser & Johnston Company, Appellees,

v.

James R. SCHLESINGER, Secretary, U. S. Department of Defense, et al., Appellants,

Concerned Workers et al., Intervenor-Defendants.

WESTINGHOUSE ELECTRIC CORPO-RATION and its subsidiary, Fraser & Johnston Co., Appellants,

v.

James R. SCHLESINGER, Secretary, U. S. Department of Defense, et al., Appellees.

WESTINGHOUSE ELECTRIC CORPO-RATION and its subsidiary, Fraser & Johnston Co., Appellees,

v.

James R. SCHLESINGER, Secretary, U. S. Department of Defense, et al., Defendants,

Concerned Workers et al., Appellants.

WESTINGHOUSE ELECTRIC CORP. and its subsidiary, Fraser & Johnston Company, Appellees,

v.

James R. SCHLESINGER, Secretary, U. S. Department of Defense, et al., Defendants,

Concerned Workers et al., Intervenors-Appellants.

WESTINGHOUSE ELECTRIC CORP. and its subsidiary, Fraser & Johnston Company, Appellees,

v.

James R. SCHLESINGER, Secretary, U. S. Department of Defense, et al., Appellants,

Concerned Workers et al., Defendant-Intervenors.

UNITED STATES STEEL CORPORA-TION, Appellant,

v.

James R. SCHLESINGER, Secretary, U. S. Department of Defense, et al., Appellees.

UNITED STATES STEEL CORPORA-TION, Appellee,

v.

James R. SCHLESINGER, Secretary, U. S. Department of Defense, et al., Appellants.

GENERAL MOTORS CORPORATION, Appellant,

v.

James R. SCHLESINGER, Secretary, U. S. Department of Defense, et al., Appellees.

GENERAL MOTORS CORPORATION, Appellee,

v.

James R. SCHLESINGER, Secretary, U. S. Department of Defense, et al., Appellants.

Nos. 74–1801 to 74–1803, 74–2047 and 74–2048, 75–1268 to 75–1271.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1975.

Decided Sept. 30, 1976.

Guy F. Driver, Jr., Greenville, S. C. (Robert T. Thompson, Robert O. King, Thompson, Ogletree & Deakins, Greenville, S. C., on brief), for Westinghouse Elec. Corp. and General Motors Corp.

Donald L. Dotson, Pittsburgh, Pa., Alison K. Schuler, Albuquerque, N. M., Hunton Williams, Gay & Gibson, Washington, D. C., on brief, for Westinghouse Elec. Corp.

Eugene L. Hartwig, Detroit, Mich., on brief, for General Motors Corp.

Burt A. Braverman, Washington, D. C. (Alan Raywid, Cole, Zylstra & Raywid, Washington, D. C., and S. G. Clark, Jr., Pittsburgh, Pa., on brief), for United States Steel Corp.

Paul Blankenstein, Atty., App. Section, Civ. Div., United States Dept. of Justice, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., Washington, D. C., Carla A. Hills, Asst. Atty. Gen., New York City, William B. Cummings, U. S. Atty., Norfolk, Va., Brian P. Gettings, U. S. Atty., Arlington, Va., and Leonard Schaitman, Atty., App. Section, Civ. Div., United States Dept. of Justice, Washington, D. C., on brief), for James R. Schlesinger, Secretary of Defense, and others.

Thomas R. Asher, Washington, D. C. (Collot Guerard, Washington, D. C., Stephen E. Ronfeldt, Oakland, Cal., Russell Galloway, Student Intern, and Marcia Hughes, Student Intern, on brief), for Concerned Workers, Robert Wooley, Legal Aid Society of Alameda County (California) and Council on Economic Priorities.

Charles E. Hill, Washington, D. C., and Daniel G. Clement, Pasadena, Cal., on brief, as amicus curiae for National Organization for Women and Consumer Federation of America.

Before RUSSELL and WIDENER, Circuit Judges, and THOMSEN, Senior District Judge.*

DONALD RUSSELL, Circuit Judge:

The plaintiffs in these three actions are government contractors, seeking injunctive and declaratory relief against the disclosure of certain information filed by them with the Office of Federal Contract Compliance (OFCC), as required under regulations issued by the Secretary of Labor pursuant to Executive Order 11,246,[1] as amended by Executive Order 11,375.[2] Two of the actions were consolidated for trial in the District Court,[3] and heard by one judge; the third action proceeded independently in the same court and was heard by another judge. In the three actions, however, plaintiffs were granted similar partial protection from disclosure of the information in question.[4] The defendants appeal from the denial of the motions to dismiss and to the grant of any relief herein; the plaintiffs cross-appeal from the denial of protection from disclosure of all the material filed by them under the requirements of the Executive Orders. All three cases involve, so far as material, like facts and like legal issues. For this reason, we have consolidated them on appeal and dispose of them in this opinion.

We affirm.

The information, the disclosure of which is the subject of controversy, was supplied under the provisions of an Executive Order, and the regulations issued thereunder, which required a government contractor, such as the plaintiffs, to file, with respect to any plant or facility engaged in performing work under a government contract, an Affirmative Action Program (AAP) and an Equal Employment Opportunity Report (EEO–1). These reports are to be filed with the contracting agency having responsibility for the contract. They are to include extensive information on staffing patterns, pay scales, actual and expected shifts in employment, promotions, seniority and related matters as well as forecasts of future employment, goals, time-tables and future employment projections, promotion and utilization of minorities and females. They embrace, also, an analysis of the employer's success in meeting such goals. All the plaintiffs filed such reports. The reports of the plaintiff United States Steel covered its Youngstown, Ohio plant, and the American Bridge Division plant at Gary, Indiana; the reports of the plaintiff General Motors dealt with its plants at Danville, Illinois, and Bedford, Indiana; and the plaintiff Westinghouse filed reports with respect to its plant at East Pittsburgh, Pennsylvania, and its Fraser & Johnston Co. subsidiary plant at San Lorenzo, California. In submitting such reports, all the plaintiffs did so under a claim of confidentiality. The reports, prepared on Standard Form 100, bore the following governmental promise or guarantee of confidentiality: "[A]ll reports and information obtained from individual reports will be kept confi-

---

* Sitting by designation.

1. The OFCC was given the authority to "adopt such rules and regulations and issue such orders as * * * necessary and appropriate to achieve the purposes thereof." § 201, Executive Order 11,246.

2. The text of Executive Order 11,246, as amended by Executive Order 11,375, is set forth in 3 C.F.R. 169–177 (1974).

3. The action by *General Motors* against the defendants was consolidated and tried with *United States Steel* and any reference to the *United States Steel* case covers the *General Motors* case as well.

4. *Westinghouse Electric Corporation v. Schlesinger* (E.D.Va.1974), 392 F.Supp. 1246; *United States Steel Corp. v. Schlesinger* (E.D.Va.1974), 34 Ad.L.2d 790.

The two opinions, though rendered by different judges of the same court, were, for all practical purposes, identical and any reference to "court" hereafter in the opinion is to the opinions and decisions of both judges.

The cases themselves are reviewed in detail in O'Reilly, *Government Disclosure of Private Secrets Under the Freedom of Information Act,* 30 *Bus. Lawyer* 1125, 1139–41 (1975), and *see, also,* discussion in Note, *Developments Under the Freedom of Information Act–1974,* 1975 *Duke L.J.* 416 at 428–9.

dential as required by Section 709(e) of Title VII." [5]

Third parties made requests of the defendants for disclosure under the Freedom of Information Act (FOIA) [6] of the AAP's and EEO-1's filed with them by the several plaintiffs. The defendants advised the plaintiffs of the requests and of a preliminary determination that the FOIA's and OFCC's disclosure rules required that the requested material, with certain identified deletions, be made available, but that before the information would be released, the plaintiffs would be afforded an opportunity to present any claim that the information requested was exempt from disclosure under the FOIA and the appropriate administrative regulations. The plaintiffs submitted their objections to the disclosure, claiming that the requested information was not disclosable under the terms of 5 U.S.C. 552(b)(3), (4), (6) and (7), 18 U.S.C. § 1905, and 42 U.S.C. § 2000e–8(e), as well as 41 C.F.R. 60–1.1, et seq. of the Department of Labor's own regulations.[7] The defendants responded by advising the plaintiffs that under the FOIA and the regulations issued thereunder, the defendants were obliged, absent judicial intervention, to release the information, subject to certain specified deletions. These actions to enjoin, and for a declaratory judgment that the material was exempt under the FOIA and disclosure thereof forbidden under applicable statutes and regulations followed. The District Court, finding federal jurisdiction under § 1331, 28 U.S.C., granted injunctive relief but denied a declaratory judgment. In reaching its conclusion, the court made, among others, this finding of fact:

"This Court finds from the evidence presented that the AAPs and EEO–1s in question contained confidential commercial or financial information which would not customarily be released to the public by the corporate plaintiffs, and that such information would be of substantial value to the plaintiff's competitors in performing cost-price analyses of plaintiffs' pricing practices, in monitoring plaintiffs' development of new products and processes, in identifying plaintiffs' customers in their consumption needs, in analyzing plaintiffs' production by product line, and in developing competitive bidding strategies to be used against the plaintiffs; and that disclosure of this information would both impair the Government's ability to obtain necessary information for its administration of the Executive Orders and Title 7 of the Civil Rights Act and would

**5.** In *Legal Aid Society of Alameda County v. Shultz* (N.D.Cal.1972), 349 F.Supp. 771, 776, the Court held that "administrative promises of confidentiality cannot extend the command of the Freedom of Information Act that only matters 'specifically exempted from disclosure by *statute*' are protected under § 552(b)(3)" (Italics in opinion). *Cf., however,* 3A.19 Davis, *Administrative Law Treatise,* pp. 150–1 (1970 Supp.).

In *Robles v. Environmental Protection Agency* (4th Cir. 1973), 484 F.2d 843, 846, we reached the same result as did the Court in the *Shultz Case.*

Since *Shultz,* the defendants have conceded that their promise of confidentiality is unavailing if the matter sought to be discovered is not exempted from disclosure by the terms of § 552 itself. Suppose, however, the material does fall within an exemption and that disclosure under the particular exemption is discretionary with the agency, has the agency by its promise of confidentiality foreclosed itself from the exercise of any discretion to disclose and obligated itself to respect the confidentiality? *See* Davis, *The Information Act: A Preliminary Analysis,* 34 U.Chi.L.Rev. 761 at 787–92 (1967); Note, *The Freedom of Information Act: A Seven-Year Assessment, supra,* 74 *Colum.L.Rev.* at 948–50. Since the District Court, however, did not predicate its decision on any such point, we see no occasion to consider this point.

**6.** 5 U.S.C. § 552.

**7.** Exemptions 3 and 4, which are the only exemptions later found to be appropriate, are as follows:

"(b) This section does not apply to matters that are—

.　　.　　.　　.　　.

(3) specifically exempted from disclosure by statute;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential."

cause substantial harm to the competitive position of the plaintiffs." [8]

 The decision of the District Court enjoining disclosure herein rests to a substantial extent on a construction of the FOIA.[9] This statute mandates the release by public officials of information in their custody, *subject to certain exemptions specifically enumerated in the Act itself.*[10] If the information sought to be disclosed under the Act "fall[s] within one of the Act's exempt categories, * * * the Act 'does not apply' to such documents." *NLRB v. Sears, Roebuck & Co.* (1975), 421 U.S. 132, 147–8, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29;

8. This finding was made in the cases of *United States Steel* and *General Motors v. Schlesinger, supra,* but is similar to the finding of fact made in the *Westinghouse* case.

9. § 552, 5 U.S.C.
The construction of the Act is complicated not only by the language of the Act itself but by its legislative history as well. Professor Levin, in his article, *In Camera Inspections Under the Freedom of Information Act,* 41 *U.Chi.L.Rev.* 557, ns. 9 and 10 (1974), quotes "Professor Kenneth Culp Davis, the Act's most influential commentator" to the effect that the Act is a "shabby product" and adds that "[i]nterpretation of the Act is complicated by the fact that the House and Senate committee reports on the Act contradict each other in many particulars, and in some instances contradict the statutory language itself."
This ambiguity in the language of the Act and in its legislative history, the author points out, has been productive of much of the litigation under the Act.

10. It has been stated that these exemptions "constitute in the aggregate a substantial withdrawal of the public's right of access to information." Note, *The Freedom of Information Act: A Seven-Year Assessment,* 74 *Colum. L.Rev.* 895, 929 (1974).
The reason for including them in the Act was that, "in developing a statute providing greater citizen access to agency information, Congress recognized the necessity for protecting the confidentiality of some agency information and the right of privacy of some individuals who are required to provide agencies with confidential information. To protect these interests Congress exempted nine categories of information from mandatory disclosure." Note, *Reverse-Freedom of Information Act Suits: Confidential Information in Search of Protection,* 70 *Nw.U.L.Rev.* 995 (1976).
In commenting on *National Parks and Conservation Ass'n. v. Morton* (1974), 162 U.S.App. D.C. 223, 498 F.2d 765, which dealt with the

*Charles River Park "A" Inc. v. Department of H. & U.D.* (1975), 171 U.S.App.D.C. 286, 519 F.2d 935, 942.[11] So far as exempt information is concerned, the Act, in the ordinary situation "neither authorizes [n]or prohibits the disclosure of such information," and the disclosure of such exempt information is ordinarily discretionary with the agency. But the exercise of this discretionary power is subject to the restraints imposed by any other "statutes, rules, and regulations" [12] and to any clear declarations of a legislative policy against disclosure as reflected in an exemption of the Act itself,[13] and, when review of an administra-

exemptions in the Act, the editor in 88 *Harv. L.Rev.* 470 at 474 (1974), said:
" * * * The Court found that the Act's strong emphasis on public disclosure was counterbalanced, in the nine exemptions, by the public interest in efficient governmental operation and by various interests of private informants in maintaining secrecy."
It is often declared in the decisions construing the exemptions that they are to be "narrowly construed." *Ethyl Corporation v. Environmental Protection Agency* (4th Cir. 1973), 478 F.2d 47, 49. But, as one writer has prudently observed, the Court, in following this rule of construction, must "recognize that the public's interest in confining the breadth of the exemptions is not equally strong for all nine provisions." *Ibid.,* 41 *U.Chi.L.Rev.* at 564, n. 52. This distinction is important when the request for information relates to "the agency's actions, plans, and policies" rather than when it relates to information that has to do with the "actions, plans, and policies" of private parties. *Ibid.,* 41 *U.Chi.L.Rev.* at 565; Note, *A Review of the Fourth Exemption of the Freedom of Information Act,* 9 Akron L.R. 673, 694 (1976).

11. The Act itself, § 552(b), 5 U.S.C., it would appear makes this clear by the following provision:
"This section [of the FOIA] does not apply to matters that are—" within the definitions of exemptions (1)–(9).

12. *Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Balt.* (4th Cir. 1974), 508 F.2d 945, 950.

13. *See,* 70 *Nw.U.L.Rev., supra,* at 1011:
"If a particular disclosure would be contrary to a policy of the Act, [such as release in a particular case of material within the fourth exemption] a court may properly find that an agency 'abused its discretion' in deciding to release the information—an approach coupling the policy considerations of the FOIA with the remedial provisions of the APA."

tive decision to disclose is sought under the APA, it is subject to reversal if arbitrary, capricious, an abuse of discretion "or otherwise not in accordance with law."[14] The fact that a contrary statute will prevent the exercise of any discretionary authority in the agency to release exempt information follows because it is settled that the FOIA does not repeal directly or by implication any other statutes which may limit or restrict the disclosure of information by public officials, and those other statutes remain in full force and effect despite the enactment of the FOIA.[15] Thus if there is some other statute or regulation which prohibits the disclosure of the exempt information, there is no agency discretion and "the [government] agencies have no alternative but to follow the legislative mandate" or agency regulation and to deny disclosure.[16] This follows because, whenever disclosure of the information in question would be violative of some other federal statute, both its exempt-character under the FOIA and its nondisclosability are thereby established.[17] This conclusion results from the Act's own exemption of all matters that are "specifically exempted from disclosure by statute,"[18] and from the holding in *FAA Administrator v. Robertson, supra,* 422 U.S. at 265, 95 S.Ct. 2140, discussed later, that the FOIA does not repeal or modify any

---

The editor in the Note, *Protection from Government Disclosure—The Reverse-FOIA Suit,* 1976 *Duke L.J.* 330 at 340, expresses substantially the same thought:

"The cases suggest three specific approaches the reverse-FOIA plaintiff might use once he has shown that the information in question is FOIA exempt: he can allege (1) that disclosure of the information in question would violate a statute; (2) that disclosure would be contrary to agency regulations; or (3) that disclosure would constitute an abuse of discretion."

In this connection, we would sharply distinguish between equitable jurisdiction invoked with reference to non-exempt and exempt information. As the Court said in *Freuhauf Corporation v. Internal Revenue Service* (6th Cir. 1975), 522 F.2d 284, appeal pending, "we do not conceive that the traditional equitable powers of the district court justify it or us in adding a tenth or eleventh exemption to the nine specifically enumerated in the Act * * *." 522 F.2d at 292. This in effect accords with our decisions in *Wellman Industries, Inc. v. N.L. R.B.* (4th Cir. 1974), 490 F.2d 427, 429, *cert. denied,* 419 U.S. 834, 95 S.Ct. 61, 42 L.Ed.2d 61 (1974), and *Wellford v. Hardin* (4th Cir. 1971), 444 F.2d 21, 25. And, as we understand *Renegotiation Board v. Bannercraft Co.* (1974), 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123, discussed at length *infra,* its reference to federal equity jurisdiction in this area is concerned with *exempt* information under the FOIA. This, however, is not the universal view. For a general discussion of the question, *see,* Note, *The Freedom of Information Act: A Seven-Year Assessment,* 74 *Colum.L.Rev.* 895, 911–20 (stating the case for general equity jurisdiction for both exempt and non-exempt information); Note, *Developments Under the Freedom of Information Act–1974,* 1975 *Duke L.J.* 416 at 418–27; Note, *Developments Under the Freedom of Information Act–1975,* 1976 *Duke L.J.* 366 at 370–2. While not directed to this point, *De-*

*partment of the Air Force v. Rose* (1976), 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11, might be considered as pointing in the direction that the discretionary jurisdiction does not cover non-exempt information.

**14.** § 706(2)(A), 5 U.S.C.; *Charles River Park "A", Inc. v. Department of H. & U.D., supra,* 519 F.2d at 940–1; Note *Ibid.,* 70 *Nw.U.L.Rev.* at 995 and 1011.

**15.** *FAA Administrator v. Robertson* (1975), 422 U.S. 255, 265, 95 S.Ct. 2140, 45 L.Ed.2d 164; *Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Balt.* (4th Cir. 1974), 508 F.2d 945, 950.

**16.** Note, *Freedom of Information: The Statute and the Regulations,* 56 *Geo.L.J.* 18, 34 (1967).

*Cf., also, EPA v. Mink* (1973), 410 U.S. 73 at 95, 93 S.Ct. 827, at 840, 35 L.Ed.2d 119, note (Stewart, J., concurring):

"Similarly rigid is [exemption 3], which forbids disclosure of materials that are 'specifically exempted from disclosure by statute.' Here, * * * the only 'matter' to be determined in a district court's *de novo* inquiry is the factual existence of such a statute, * * *."

**17.** *Ibid.,* 1976 *Duke L.J.* at 340.

In this article the editor correctly states that a FOIA-plaintiff "need show only that disclosure would violate a particular federal statute in order to prove both that the information is FOIA-exempt and also that disclosure must be enjoined. Once it is determined that a specific statute prohibits the disclosure of certain information, the information is by definition exempt from mandatory disclosure under the statutory exemption of the FOIA. At the same time, disclosure which would violate a statute may be enjoined under the APA as agency action which is 'not in accordance with law.'"

**18.** § 552(b)(3).

other statute which may restrict disclosure.[19]

In these cases, the plaintiffs assert that both the Civil Rights Act of 1964, Title VII, § 709(e), 42 U.S.C., § 2000e–8(e), and § 1905, 18 U.S.C., which prohibit under criminal penalty the disclosure by any federal employee of confidential trade and financial information supplied a federal agency, represent statutes embraced within exemption (b)(3) of the FOIA, and are statutes which prohibit the release of much of the information in the two reports in question. They raised this contention in their objection to disclosure submitted administratively to the defendants. The defendants, however, dismissed the claim under both statutes. They specifically found that § 2000e–8(e) did "not prohibit the release of information by officers or employees of other Government agencies where such information is obtained under other authority as E.O. 11246 which requires contractors having a contract, containing provisions prescribed in Section 202 of said E.O. to file Compliance Reports and furnish such information." The same objections to disclosure, based upon both § 1905 and § 709(e), were pressed in the District Court.[20] That Court, in disposing of the claims, stated that 709(e) of the Civil Rights Act of 1964 was not applicable since the reports involved here were filed, not under the provisions of the Civil Rights Act of 1964, but under Executive Order 11,246. It did not deal specifically with § 1905 as within the exemption of (b)(3) of the Act but it did conclude that § 1905, taken in conjunction with (b)(4), represented a clear prohibition against disclosure of "confidential" material as defined in (b)(4) of the Act and in § 1905. The plaintiffs, by their cross-appeal, renew their contentions under § 709(e).

So far as a claim under § 709(e) is concerned, we are inclined to agree with the District Court that, despite the persuasiveness of the argument to the contrary, and the cogent reasoning advanced by Justice Douglas in his opinion disposing of a request for a stay in *Chamber of Commerce v. Legal Aid Society* (1975), 423 U.S. 1309, 96 S.Ct. 5, 46 L.Ed.2d 14, the information involved here cannot claim immunity under § 709(e) as a statute forbidding disclosure of the information in question in these actions.[21]

The applicability of § 1905, upon which the District Court rested its decision, is, however, considerably more compelling. This is because of the recent decision in *FAA v. Robertson*. There had been, prior to *Robertson*, considerable contrariety in the decisions of the District and Circuit Courts on the statutes properly within the scope of Exemption 3. Some of those conflicting decisions are cited by the Supreme Court in *Robertson*, 422 U.S. at 262–3, n. 6, 95 S.Ct. 2140.[22] Among those statutes

---

**19.** 422 U.S. at 265, 95 S.Ct. 2140.

**20.** The plaintiffs, also, claimed exemption under (b)(7), which deals with investigatory files. The District Court found such a claim without merit. The 1974 amendments to the Act, which are applicable here, fully support this conclusion. *See, Ibid.*, 1976 *Duke L.J.* at 399–401. Those amendments, the Court declared in *NLRB v. Sears, Roebuck & Co., supra*, 421 U.S. at 164–5, 95 S.Ct. at 1523, extend this exemption "only to * * * 'the production of such records [which] would interfere with enforcement proceedings, deprive a person of a right to a fair trial or an impartial adjudication, [or] constitute [an] * * * unwarranted invasion of personal privacy, disclose the identity of an informer, or disclose investigative techniques and procedures.'" Obviously, the information in question cannot qualify under that standard and it is accordingly unnecessary to consider further this claim of the plaintiffs. *See*, Note, Fuselier and Moeller, *NLRB Investigatory Records: Disclosure Under the Freedom of Information Act*, 10 *U.Rich.L.R.* 541 (1976).

**21.** *See, Sears, Roebuck and Co. v. General Services Admin.* (1974), 166 U.S.App.D.C. 194, 509 F.2d 527, 529; *Hughes Aircraft Company v. Schlesinger* (D.C.Cal.1974), 384 F.Supp. 292, 295; *Legal Aid Society of Alameda County v. Shultz* (N.D.Col.1972), 349 F.Supp. 771, 775–6.

**22.** An interesting case, not listed in *Robertson* and which reached a contrary result to that in the District of Columbia decisions, later discussed, is *Nichols v. United States* (10th Cir. 1972), 460 F.2d 671, 673, *cert. denied*, 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972), involving items and material connected with the assassination of President Kennedy.

about which there has been such a difference of opinion is § 1905. Thus, in the early case of *Consumers Union of U. S., Inc. v. Veterans Admin.* (S.D.N.Y.1969), 301 F.Supp. 796, 801–2, appeal dismissed on other grounds, 436 F.2d 1363, it was assumed that § 1905 was within the coverage of Exemption 3 but the Court found that the information there involved did "not appear to contain trade secrets or other information mentioned in § 1905." [23] However, in a consistent line of cases, beginning with *Grumman Aircraft Engineer. Corp. v. Renegotiation Bd.* (1970), 138 U.S.App.D.C. 147, 425 F.2d 578, 580, n. 5, and continuing up to *Charles River Park "A", Inc. v. Department of H. & U.D.* (1975), 171 U.S.App.D.C. 286, 519 F.2d 935, 941, n. 7, the District and Circuit Courts of the District of Columbia have held that § 1905 is not among the statutes referred to in § 552(b)(3).

In *Grumman*, the earliest of these cases, the rationale for this holding was stated to be that "section 1905 merely creates a criminal sanction for the release of 'confidential information.' Since this type of information is already protected from disclosure under the Act by § 552(b)(4), section 1905 should not be read to expand this exemption, especially because the Act requires that exemptions be narrowly construed." In other words, § 1905 was found under this reasoning to be "co-extensive with exemption 4," which itself constituted "a separate ground for nondisclosure". Accordingly it was unnecessary to consider whether § 1905 fell within the third exemption of the Act since the result would be the same in any event.[24] In *M. A. Schapiro & Co. v. Securities and Exchange Com'n* (D.C.D.1972), 339 F.Supp. 467, 470, the Court found another reason for denial of inclusion of § 1905 within (b)(3). It said:

"\* \* \* There is nothing in § 1905 of Title 18 that prevents the operation of the Freedom of Information Act. Moreover, the provision for documents specifically exempted from disclosure by statute [5 U.S.C. § 552(b)(3)] relates to those other laws that restrict public access to *specific* government records. It does not, as defendants allege, relate to a statute [such as § 1905] that generally prohibits all disclosures of confidential information." [25]

Other cases from the District of Columbia have proceeded on this distinction between statutes which described *"specific"* records as nondisclosable and those which *generally* prohibited disclosure in finding § 1905 and like statutes not within (b)(3).[26] This reasoning was adopted in *Robertson v. Butterfield* (1974), 162 U.S.App.D.C. 298, 498 F.2d 1031, 1033, n. 6, *rev. sub nom., FAA Administrator v. Robertson* (1975), 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164, where, in finding that nondisclosure under the authority of § 1504, 49 U.S.C., a statute which represent-

**23.** To the same effect is *Pleasant Hill Bank v. United States* (W.D.Mo.1973), 58 F.R.D. 97, 98, n. 1.

**24.** *See Ditlow v. Volpe* (D.C.D.1973), 362 F.Supp. 1321, 1324, *rev.* on other grounds, 161 U.S.App.D.C. 154, 494 F.2d 1073.

**25.** The holding in this case was summarized in O'Reilly, *ibid.*, p. 1135:

"\* \* \* The district court held \* \* \* that the general nature of its prohibition prevented Section 1905's application to the FOIA exceptions for documents 'specifically exempted from disclosure by statute.' "

The District Court of New York had reached a similar result in *Frankel v. Securities and Exchange Commission* (S.D.N.Y.1971), 336 F.Supp. 675, reversed without reference to this point, 2 Cir., 460 F.2d 813, *cert. denied*, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972)

but the later case of *Consumers Union, supra*, from the same District, 301 F.Supp. 796, seems to be contrary.

**26.** Other cases, echoing the reasoning on this point in *Schapiro*, are *Sears, Roebuck & Co. v. General Services Admin.* (1974), 166 U.S.App. D.C. 194, 509 F.2d 527, 529, and *Neal-Cooper Grain Company v. Kissinger* (D.D.C.1974), 385 F.Supp. 769, 776. In *Neal-Cooper*, the Court said:

"The 'ordinary meaning of the language of Exemption (3) is that the statute therein referred to must itself specify the documents or categories of documents it authorizes to be withheld from public scrutiny.' The law in this Circuit, as stated *supra*, appears to be that 18 U.S.C. § 1905 is not sufficiently specific to come within Exemption (3). No more need be said on that score."

ed a general prohibition of disclosure of confidential information rather than of "specific" records, was not justified by reference to Exemption 3, the Court said:

> "18 U.S.C. § 1905 is a criminal statute prohibiting unauthorized disclosure of any information by a federal employee. There is nothing in the section which prevents the operation of the Information Act. It does not fall within the ambit of Exemption (3)," citing *Schapiro.*

Whether the Court in *Butterfield,* by its reference to the fact that § 1905 was a criminal statute, found in this any reason for excluding it from the scope of Exemption 3 is perhaps unclear. If it did, though, the decision manifestly is at variance with the later decision from the same court in *Parker v. Equal Employment Opportunity Commission* (D.C.Cir.1976), 534 F.2d 977, where the Court found, after stating that "[t]he Supreme Court [in *FAA Administrator v. Robertson* (1975), 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164] has extended that exemption [*i. e.,* (b)(3)] beyond what may have been its narrowest compass," found the statute involved there, which was a criminal statute like § 1905, within Exemption 3. And in both *Tax Analysts & Advocates v. I. R. S.* (1974), 164 U.S.App. D.C. 243, 505 F.2d 350, and *Freuhauf Corpo-*

*ration v. Internal Revenue Service, supra,* 522 F.2d 284, it was recognized that a criminal statute (§ 7213, 26 U.S.C.) would qualify under Exemption 3. There remain only two objections that (1) § 1905 does not contain language which "prevents the operation. of the FOIA" and (2) that it is a general prohibition on disclosure rather than a prohibition against the disclosure of "specific" records. The Court in *Charles River Park* effectively answered the first objection [27] and the Supreme Court in *FAA v. Robertson,* reversing *Robertson v. Butterfield,* it seems manifest, disposes finally and conclusively of both objections to § 1905 as qualifying under Exemption 3.[28]

■ The Supreme Court in *Robertson,* focusing upon Exemption 3, concluded (1) that it was not the intent of Congress in enacting the FOIA to repeal or amend in any way statutes then "extant" which restricted access to specific government information but intended that such statutes should remain in effect, and (2) that the term "specific" in Exemption 3 does not mean that such Exemption applies only to statutes restricting access to *named* documents but applies to statutes which *generally* direct government agencies to withhold.[29] And it specifically rejected the con-

---

**27.** 519 F.2d at 522.

The reasoning of *Charles River Park* on this point may be summarized thus: Information "confidential" under the test stated in *National Parks and Conservation Ass'n. v. Morton, supra,* 498 F.2d at 770, is necessarily both within Exemption 4 of the FOIA, and the prohibition of § 1905. Since such information would be exempt from disclosure under the FOIA, its disclosure is not "authorized" under the FOIA and its disclosure is prohibited under § 1905.

**28.** We had, to some extent at least, anticipated *Robertson* in our decision in *Sears v. Gottschalk* (4th Cir. 1974), 502 F.2d 122 at 128–31.

*See, also, Citizens for a Better Environ. v. Dept. of Com.* (N.D.Ill.1976), 410 F.Supp. 1248, 1249–50.

**29.** 422 U.S. 264–66, 95 S.Ct. 2140.

The Court said at pp. 265–66, 95 S.Ct. at p. 2147:

"* * * The term 'specific' as there used cannot be read as meaning that the exemp-

tion applies only to documents specified, *i. e.,* by naming them precisely or by describing the category in which they fall. To require this interpretation would be to ask of Congress a virtually impossible task. Such a construction would also imply that Congress had undertaken to reassess every delegation of authority to withhold information which it had made before the passage of this legislation—a task which the legislative history shows it clearly did not undertake.

"* * * To spell out repeal by implication of a multitude of statutes enacted over a long period of time, each of which was separately weighed and considered by Congress to meet an identified need, would be a more unreasonable step by a court than to do so with respect to a single statute such as was involved in the *Regional Rail Reorganization Act Cases,* * * *. Congress' response was to permit the numerous laws then extant allowing confidentiality to stand; it is not for us to override that legislative choice."

struction of the Exemption as phrased in *Schapiro*.[30]

It is true that *Robertson* did not identify § 1905 as a statute within the parameters of Exemption 3. But the conclusion seems inescapable that it was so considered. § 1905 certainly fitted the description of an "extant" statute as defined by the Supreme Court in *Robertson* and it represented the type of "general" prohibition of disclosure discussed therein. Moreover, the Court in *Robertson*, quoting from the legislative record, stated:

"* * * When the House Committee on Government Operations focused on Exemption 3, it took note that there are 'nearly 100 statutes or parts of statutes which restrict public access to specific Government records. *These would not be modified* by the public records provision of S. 1160.'" (Italics in opinion)[31]

There can be little doubt that § 1905 was among those "nearly 100 statutes or parts of statutes * * * not * * * modified" or repealed by the FOIA and intended to be covered by Exemption 3, to which the Congress and the Court in *Robertson* referred. And the Attorney General in his Memorandum Opinion on the scope and application of the Act, as quoted in *Robertson v. Butterfield, supra,* 498 F.2d at 1033–4, n. 6, regarded § 1905 as such. Further, § 1905 had been earlier identified in legislative hearings as a statute which prohibited disclosure.[32] In *Weisberg v. Department of Justice* (1973), 160 U.S.App.D.C. 71, 489 F.2d 1195, 1202, *cert. denied,* 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974), an *en banc* decision of the very Circuit that had espoused the doctrine of *Schapiro,* the Court referred to the Regulations of the General Services Administration, as set forth in 41 C.F.R. § 105–60.604 (1972) for a listing of illustrative statutes considered to be within Exemption 3. The first statute on that list is § 1905.[33] Indeed, the Department of Labor itself has assumed that § 1905 is among the statutes incorporated

---

**30.** *See Citizens for a Better Environ. v. U. S. Dept. of Com.* (N.D.Ill.1976), 410 F.Supp. 1248, 1249–50.

That *Robertson* is in effect a reversal of *Schapiro* and related cases is, also, the opinion of the editor in the Note, *Developments Under the Freedom of Information Act—1975,* 1976 *Duke L.J.* 366 at 395–8. In that article, the editor refers to the view taken in *Robertson v. Butterfield* and like cases such as *Schapiro* and compares them with the construction of Exemption 3 as set forth by Judge MacKinnon in his dissent in *Schechter v. Weinberger* (1974), 162 U.S.App.D.C. 282, 498 F.2d 1015, 1016. In that dissent, Judge MacKinnon assumed that Congress in enacting the FOIA was aware of the "extant" statutes prohibiting disclosure and reasoned that "[i]f Congress had not intended to include [a particular statute] within Exemption Three, it could easily have done so either by *explicitly narrowing the coverage of the* exemption or by amending" the statute in question. This construction of the Exemption is described as the "broadest" construction of the Exemption, "since it clearly rejects the notion that the FOIA can be read in any sense as repealing or modifying by implication a statute authorizing nondisclosure which existed prior to the enactment of the FOIA." *Ibid.,* at 396. The editor concludes that "[t]he construction of exemption 3 adopted by the Court in *Robertson* is similar in both theory and consequence to the broad construction advanced by Judge MacKinnon." *Ibid.,* at 396.

*Sears, Roebuck and Co. v. General Services Admin.* (D.C.D.1975), 402 F.Supp. 378, 381, n. 3 takes a contrary view but it is impossible to reconcile its conclusion with the decision of the Supreme Court in *Robertson* or of the Circuit Court in *Charles River Park.*

**31.** *Ibid.,* 422 U.S. at p. 265, 95 S.Ct. at p. 2147.

In an early article on the FOIA, a writer anticipated the later ruling in *Robertson,* stating:

"There are nearly one hundred statutory provisions specifically restricting disclosure in one way or another. While they are phrased in various ways—such as specifically exempting from disclosure, prohibiting disclosure except as authorized by law, or providing for disclosure only as authorized by law—it is clear from the House Report that all of them are included in exemption (b)(3)."

Note, *Freedom of Information: The Statute and the Regulations,* 56 *Geo.L.J.* 18 at 33–4 (1967).

**32.** *See* 1958 Hearings before the Subcommittee on Constitutional Rights, Senate Judiciary Committee, pp. 985–7.

**33.** 41 C.F.R. § 105–60.604 reads as follows:

"(a) 5 U.S.C. 552(b)(3) provides that the statute does not apply to matters that are specifically exempted from disclosure by other statutes. (For further discussion of this matter, see the Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act (June 19, 1967), pages 31 and 32).

(b) The following are illustrative of such statutes, but are not all inclusive:

within Exemption 3, for in its Regulations on disclosure, it forbids any employee under its control or delegation to disclose any records or information within the prohibition of § 1905.[34] In fact, this Regulation of the Department of Labor, *by which the defendants in the stipulation in the United States Steel Case admitted they were bound, since they only act in these matters by delegation of the Department of Labor,* has the effect of law and would itself meet the qualifications of Exemption 3. And such was the specific holding in *Chrysler Corp. v. Schlesinger* (D.Del.1976), 412 F.Supp. 171, 177, involving an identical claim to that asserted here, and being against the same defendants as in these cases.[35] In the *Chrysler Case,* the Court said:

> "5 U.S.C. § 301 is the general statute providing for the promulgation of regulations for the use and custody of govern-

ment records. Pursuant to this statute, the Secretary of Labor promulgated 29 C.F.R. § 70.21(a) which is applicable to DSA as a delegate of powers of the Department of Labor's OFCC. (*See,* 41 C.F.R. § 60–1.6)."

▋ We accordingly think the District Court in these cases properly found that § 1905 is a statute qualifying under Exemption 3, both specifically as one of the "100 or more" statutes included therein, and by incorporation thereunder of the applicable Regulation of the Department of Labor,[36] and could have decided the cases on that basis,[37] as we later indicate.

[11] But whether the information be deemed exempt under the FOIA or prohibited from disclosure under § 1905, the defendants would deny completely any jurisdiction in the District Court to make a determination to that effect at the instance

---

(1) 18 U.S.C. 1905 (trade and financial information provided in confidence by businesses).
 \* \* \*."

**34.** 29 C.F.R. § 70.21(a) is as follows:
"Pursuant to the provisions of 18 U.S.C. 1905, every officer and employee of the Department of Labor is prohibited from publishing, divulging, disclosing, or making known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with the Department or any agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association. No officer or employee of the Department of Labor shall disclose records in violation of this provision of law."

**35.** 392 F.Supp. at 1250.

**36.** The author in the Note in 70 *Nw.U.L.Rev.* at 1016 would find § 1905 not to be a restriction on disclosure, "[b]ecause reliance on section 1905 would restrict unduly the court's ability to determine whether the information should be disclosed," and it "is perceived as a relic of an earlier age of government secrecy." It based this comment largely on a recommendation of

the Sub-committee on Government Operations, made to the House Committee on the Judiciary, that § 1905 be repealed so that it would not be an impediment to disclosure. The Congress, however, has not repealed § 1905. This fact, under the reasoning of Judge MacKinnon in *Schechter,* note 28, which was adopted later in *People of State of California v. Weinberger* (9th Cir. 1974), 505 F.2d 767, 768, and received final approval in *Robertson,* would seem fairly conclusive evidence of legislative intent not to remove § 1905 as a prohibition against disclosure, qualifying as such under Exemption 3. In any event, in the absence of actual repeal, it is not, under Chief Justice Burger's language in *Robertson,* the function of courts to do what Congress has failed to do. We might note parenthetically, too, that the author at no point cites or refers to *Robertson,* which it would seem invalidates his conclusion.

Even if the author were correct in his analysis, the defendants would not be aided in their defense of these cases. The regulation of the Department of Labor, which they stipulated as controlling, incorporated the restrictions of § 1905 *eo nomine* and a violation of such regulations would justify relief in any event. *See United States v. Heffner* (4th Cir. 1969), 420 F.2d 809, 811–12.

**37.** This was the criticism directed at the decision in *Charles River* by the writer in Note, *Developments Under the Freedom of Information Act—1974,* 1975 *Duke L.J.* 416, 428, n. 56, noted *infra.*

of the plaintiffs who were the suppliers of the information.[38] They contend the FOIA provides a procedure to compel disclosure and that is the *exclusive* remedy available under the Act. Under this argument, a requestor of government information, if denied access, is entitled under the Act to a *de novo* judicial hearing on his right to obtain the information but the Act not only does not give, it precludes any remedy in favor of a supplier of private "confidential" information to a governmental agency under statutory or administrative compulsion. The latter, under this argument, is completely remediless if the agency determines to release the information, despite the fact that such information be confidential private information, exempt under Exemption 4 and within the prohibition of disclosure under § 1905, which, if released, will inflict competitive injury on him. It would seem sufficient answer to this argument that this position of the defendants, though often raised, has never been accepted by any court. As one commentator has concluded, after an exhaustive review of all the reverse-FOIA cases, "no court has [ever] failed to find jurisdiction," in such cases, though he adds "there has been substantial disagreement as to the proper basis for this finding." Note, *Protection from Government Disclosure—The Reverse-FOIA Suit,* 1976 *Duke L.J.* 330, 347; *see, also,* Note, *Reverse-Freedom of Information Act Suits: Confidential Information in Search of Protection,* 70 *Nw.U.L.Rev.* 995, 999–1000; *Charles River Park "A", Inc. v. H. & U.D.* (1975), 171 U.S.App.D.C. 286, 519 F.2d 935, 939; *Sears, Roebuck and Co. v. General Services Admin.* (1974), 166 U.S.App.D.C. 194, 509 F.2d. 527 (jurisdiction assumed without discussion); *Chrysler Corp. v. Schlesinger* (D.Del.1976), 412 F.Supp. 171, 174–5; *Hughes Aircraft Company v. Schlesinger* (C.D.Cal.1974), 384 F.Supp. 292, 294; *Westinghouse Electric Corporation v. Schlesinger* (E.D.Va.1974), 392 F.Supp. 1246, 1248; *United States Steel Corp. v. Schlesinger* (E.D.Va.1974), 35 Ad.L.2d 790 (jurisdiction assumed without discussion); *McCoy v. Weinberger* (W.D.Ky.1974), 386 F.Supp. 504, 507–8; *Neal-Cooper Grain Company v. Kissinger* (D.D.C.1974), 385 F.Supp. 769 (jurisdiction assumed without discussion); *Hughes Aircraft Company v. Schlesinger* (C.D.Cal.1974), 384 F.Supp. 292, 294.[39] And this assumption of jurisdiction seems to have recently received approval in *Renegotiation Board v. Bannercraft Co.* (1974), 415 U.S. 1, 17, 94 S.Ct. 1028, 39 L.Ed.2d 123. In that case, the same argument as is pressed by the defendants here

**38.** We group § 1905 and Exemption 4 together because it has been uniformly held that the scope of § 1905 and Exemption 4 of the FOIA are, as stated in *Pharmaceutical Manufacturers Ass'n. v. Weinberger* (D.C.D.1975), 401 F.Supp. 444 at 446, "the same," or, as put in *Ditlow,* 362 F.Supp. at 1324, "co-extensive." Accordingly, material qualifying for exemption under (b)(4) falls within the material, disclosure of which is prohibited under § 1905. And this was the specific holding in *Charles River Park* (519 F.2d pp. 941–2 and n. 7). *See, also,* n. 27, *supra.*

**39.** In *Neal-Cooper Grain Company v. Kissinger* (D.C.D.1974), 385 F.Supp. 769, 775, the Court noted that in the District Court decision in *Charles River Park* (360 F.Supp. 212),

"[t]he Court held that the FOIA did not apply to the case because it was passed for the benefit of parties seeking disclosure, apparently concluding that it thus had no relevance to a claim seeking to bar disclosure.

"*Charles River* was one of the first 'reverse-FOIA' suits to come to the courts. Developments since that time have, in the opinion of the Court, made it clear that the FOIA does apply to such matters. In *National Parks & Conservation Assoc. v. Morton,* plaintiffs sought to compel disclosure of information which had been supplied to the government on a confidential basis. The District Court had granted summary judgment to defendant on the basis of the confidentiality exemption to the FOIA. The Court of Appeals remanded, saying that the lower court must examine the material to determine if the informational disclosure would either impair the Government's ability to obtain information in the future or harm the competitive position of the supplier of information. In so doing, the Court recognized both that the policy of the FOIA was to encourage disclosure and that the purpose of the confidentiality exemption was to protect the rights of suppliers of information. After *Morton,* there would seem little doubt that the FOIA does apply to a suit seeking to prevent disclosure."

was advanced, *i. e.*, that the remedy expressly given under the FOIA "constitute[s] the *exclusive* method" under the Act and "that any implication of other injunctive power * * * would be inconsistent with the statutory language." In answer, the Court, after noting " 'the broad equitable jurisdiction that inheres in courts * * * where the proposed exercise of that jurisdiction is consistent with the statutory language and policy, the legislative background and the public interest' " [40] held:

"The broad language of the FOIA, with its obvious emphasis on disclosure and with its exemptions carefully delineated as exceptions; the truism that Congress knows how to deprive a court of broad equitable power when it chooses so to do, *Scripps-Howard, [Scripps-Howard Radio, Inc. v. FCC] supra*, 316 U.S. [4], at 17 [62 S.Ct. 875 at 883, 86 L.Ed. 1229 (1942)]; and the fact that the Act, to a definite degree, makes the district courts the enforcement arm of the statute, 5 U.S.C. § 552(a)(3), persuade us that the *Babcock [United States v. Babcock*, 250 U.S. 328, 39 S.Ct. 464, 63 L.Ed. 1011 (1919)] and *Switchmen's Union [Switchmen's Union v. National Mediation Board*, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61 (1943)] principle of a statutorily prescribed special and exclusive remedy is not applicable to FOIA cases. With the express vesting of equitable jurisdiction in the district court by § 552(a), there is little to suggest, despite the Act's primary purpose, that Congress sought to

limit the inherent powers of an equity court." (415 U.S. pp. 19–20, 94 S.Ct. p. 1038)

 It follows, therefore, that the supplier of information, protected from disclosure under the overall policy expressed in an exemption to the FOIA, or under a specific statutory prohibition such as § 1905, is not without a remedy, in a proper case, to challenge the right of an agency to disclose material furnished the agency under a claim of confidentiality; and the argument of the defendants to the contrary is without merit. The real issue thus becomes the type of remedy available to the supplier in such a case.

It is the defendants' position that, if the plaintiffs are entitled to any judicial remedy in these cases, it must be solely under the review procedures provided under the Administrative Procedure Act,[41] that there can be no other basis for subject-matter jurisdiction. This argument of the defendants seems to have been faced directly in but one reported case, *Charles River Park "A", Inc. v. H. & U.D.*[42] In that case, the Court began initially with the assumption that § 1905 did apply and, on that basis, found federal-question jurisdiction.[43] On reargument, however, it withdrew its holding to this effect, reasoning that "review under the APA, the normal method of reviewing agency action, is sufficient to safeguard any interests that section 1905 is supposed to protect." [44] To some extent, the Court was undoubtedly influenced in this conclusion by the previous rulings of

**40.** Quoting from *Porter v. Warner Holding Co.* (1946), 328 U.S. 395, 403, 66 S.Ct. 1086, 1091, 90 L.Ed. 1332.

**41.** § 706, 5 U.S.C.

**42.** 519 F.2d 935.

**43.** *See, Pharmaceutical Mfrs. Ass'n v. Weinberger* (D.C.D.1976), 411 F.Supp. 576, 577, n. 1:

"The published opinion in *Charles River Park* withdrew the slip opinion's observation (found in footnote 5) that 18 U.S.C. § 1905 created a private right of action. The court held instead that review under the Administrative Procedure Act is available."

It seems quite clear that had the Court in *Charles River Park* had the benefit of the later decision in *FAA v. Robertson*, it would not have receded from its initial decision that § 1905 provided a basis for federal subject-matter jurisdiction and would have granted the plaintiff the full evidentiary hearing to which such a proceeding would have entitled the plaintiff. In such an action, there would have been no basis for an APA review, since § 1905 does not admit of administrative discretion, the review of which is the purpose of APA review.

*Cf.*, Note, 1976 *Duke L.J.* at 342 (" * * * section 1905 does not speak in terms of discretion * * * ").

**44.** 519 F.2d at 941, n. 6.

the Circuit in *Grumman*,[45] *Schapiro*[46] and similar cases, discussed *supra*, that § 1905 is not within Exemption 3, though it is interesting that the Court, somewhat reluctant to reaffirm completely *Schapiro* and *Grumman*, said rather cryptically that "5 U.S.C. § 552(b), does not incorporate section 1905 into the FOIA in such a way as to make section 1905 broader than the fourth exemption" and concluded with the statement that, "[s]ince only the FOIA's fourth exemption deals with matters covered by section 1905, consideration of section 1905 in FOIA cases is appropriate only when the information falls both within the fourth exemption and under section 1905."[47] In short, it construed § 1905 and Exemption 4 as "co-extensive" in scope[48] and held that, if the material were exempt from disclosure under Exemption 4 of the FOIA, it was automatically prohibited from disclosure

under § 1905.[49] And it held that this determination could be made through the review procedure made available under the APA, though, as one commentator has observed, "the court in *Charles River Park 'A', Inc. v. HUD* indicated that it would imply a private right of action under section 1905 in the appropriate situation."[50] *Charles River Park* thus is not authority for the proposition that the plaintiffs' remedy here is solely and exclusively under the APA simply because in that case it proceeded under the APA. In fact, any such rule would create a jurisdictional anomaly, under which a federal court in one district might afford the supplier a remedy which would be denied him in another federal district. This result follows from the great difference among the Circuits, and in the opinion of the commentators, on whether the APA confers federal subject-matter jurisdiction.[51] Such

**45.** 425 F.2d 578.

**46.** 339 F.Supp. 467.

**47.** 519 F.2d 941–2, n. 7.

It is of interest that *Charles River* is criticized in the Note, 1975 *Duke L.J.* at 428 as "a thoroughly unsatisfactory decision" and the rationale of its criticism was that "[t]he issue in the case should have been whether section 1905 specifically exempted the information from disclosure under the statutory exemption, 5 U.S.C. § 552(b)(3) (1970)—a position uniformly rejected by other statutes, see note 76 infra—and, if so, whether a private party can invoke the exemption." We agree, as we later indicate, that the applicability of § 1905 was a critical issue in that case, as it is in these cases. But, in *Charles River*, the panel was writing for a court, which, not yet supplied with the authoritative construction of Exemption 3 as declared in *Robertson* was bound by its earlier decisions giving that exemption a restricted application and assimilating § 1905 with Exemption 4 by finding that the two were "co-extensive."

**48.** *Pharmaceutical Mfrs. Ass'n v. Weinberger*, *supra*, 401 F.Supp. at 446; *Ditlow v. Volpe*, *supra*, 362 F.Supp. at 1324.

**49.** O'Reilly, *ibid.*, 30 *Bus.Law* at 1137, summarizes this ruling of the Court:

"[a]fter a rejection of section 1905's use as a 'specifically exempted by statute' protection under the Freedom of Information Act, the *Charles River* opinion gave that confidentiality statute a new usefulness."

**50.** Note, 1976 *Duke L.J.* at 350.

**51.** This difference of opinion on whether the APA confers independent subject-matter jurisdiction, is illustrated in the contrary views of two respected commentators. Professor Davis in Administrative Law of the Seventies, § 23.-02, p. 530 (1976 Supp.) finds the clear weight of authority in favor of subject-matter jurisdiction under the APA; 13 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3568, pp. 465–6 (1975 ed.) is equally certain that the "majority view" is expressed by those courts which have rejected the argument that the Administrative Procedure Act is a grant of jurisdiction.

*Littell v. Morton* (4th Cir. 1971), 445 F.2d 1207, 1212–13; *McEachern v. United States* (4th Cir. 1963), 321 F.2d 31, 33, and *Deering Milliken, Inc. v. Johnston* (4th Cir. 1961), 295 F.2d 856, 865, it seems support the view that in this Circuit the APA is regarded as granting federal subject-matter jurisdiction; at least Hart & Wechsler, *The Federal Courts and the Federal System*, p. 1161, n. 6 (1973 ed.) so construe *McEachern*, and *Ortego v. Weinberger* (5th Cir. 1975), 516 F.2d 1005, 1011, finds *Littell* to recognize that the APA confers jurisdiction. However, the District Court decisions in this Circuit, as well as those outside, "are approximately equally divided on whether the APA is an independent jurisdictional grant." 516 F.2d at p. 1011. *Compare, Etheridge v. Schlesinger* (E.D.Va.1973), 362 F.Supp. 198, 200–1; *James River v. Richmond Metropolitan Authority* (E.D.Va.1973), 359 F.Supp. 611, 622, *aff'd* on other grounds, 4 Cir., 481 F.2d 1280, and *Garmon v. Warner* (W.D.N.C.1973), 358 F.Supp. 206, 208 (all sustaining jurisdiction under APA), with *International Fed. of P. & T.*

difference is illustrated by the decisions in *Charles River Park* and *Chrysler Corp. v. Schlesinger.* The first arose in the District of Columbia, where the rule prevails that the APA confers subject-matter jurisdiction;[52] the second arose in the Third Circuit, which has found that APA confers no such jurisdiction.[53] If the defendants were correct in their contention, the plaintiff in *Charles River Park* would have a remedy but the plaintiff in *Chrysler* would be remediless. It is inconceivable that such a disparity in rights could be sanctioned in a unified judicial system.[54]

But even if the method of review under the APA as approved in *Charles River Park* were followed in these cases, the procedure would not have been substantially different from the procedure actually followed by the District Court. The only action taken by the District Court at trial, to which the defendants object, is that it held an evidentiary hearing in these cases and received evidence from both plaintiffs and defendants on the single issue of "confidentiality" of the information under review, as defined in *National Park and Conservation Ass'n v. Morton, supra,* 498 F.2d 765.[55] They contend the District Court was forbidden from holding such an evidentiary hearing and

was required to render its decision on the administrative record, consisting almost entirely of the agency's *ipse dixit* that the information in question was disclosable under the Act and was not protected under either Exemption 4 or § 1905. Specifically, their position is that the District Court had no right to receive any evidence on the qualification of the challenged material as "confidential" under the standard mandated in § 1905 and Exemption 4, which, according to the decisions, as we have seen, are the "same" or "co-extensive." [56]

*Charles River Park*, however, holds exactly to the contrary: it declares that, even in an APA review, the District Court should have an evidentiary hearing to determine whether, on the evidence adduced, the challenged material is "confidential" and thereby exempt from disclosure under Exemption 4 and prohibited from disclosure under § 1905. In that case, the Circuit Court did not instruct the District Court to look to the administrative record, or the decision of the agency, in order to determine whether the information in question was "confidential" and thus within the exemption prohibited by Exemption 4 of the FOIA, and within the prohibition of § 1905; on the contrary,

*Eng., Loc. No. 1 v. Williams* (E.D.Va.1974), 389 F.Supp. 287, 291, *aff'd* without opinion, 4 Cir., 510 F.2d 966; *Hagedorn v. Union Carbide Corporation* (N.D.W.Va.1973), 363 F.Supp. 1061, 1063, and *Yahr v. Resor* (E.D.N.C.1972), 339 F.Supp. 964, 967, *aff'd* on other grounds, 4 Cir., 431 F.2d 690 (all to the contrary, denying subject-matter jurisdiction under APA).

**52.** 519 F.2d at 939.

**53.** 412 F.Supp. at 174–5.

**54.** It was this very uncertainty of a remedy, arising if the APA were held to be the exclusive procedure available to the supplier of information, that caused the writer of the Note in 70 *Nw.U.L.Rev.* at 1007 to opt for a § 1331 action. He said:

"The uncertainty of the APA as an independent jurisdictional grant makes the statutory grant of 'federal question' jurisdiction in section 1331 of Title 28 of the United States Code the most likely basis for jurisdiction in reverse-FOIA suits."

**55.** This definition of "confidentiality" as stated in *Morton,* is:

"To summarize, commercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." (p. 770)

For an exhaustive review of the progress in development of the definitive standard for construing the terms of Exemption 4 of the Act, *see* Note, *Public Disclosure of Confidential Business Information Under the Freedom of Information Act,* 60 *Cornell L.Rev.* 109, 113 (1974), and *Ibid.,* 74 *Colum.L.Rev.* at 948–53.

There is, also, an extensive note on this exemption in 21 A.L.R.Fed. 224, *et seq.,* and it is discussed at length in 41 *U.Chi.L.Rev.* at 572–5, as well as Note, 9 *Akron L.Rev.* at 675–81.

**56.** *See, Pharmaceutical Manufacturers Ass'n v. Weinberger,* 401 F.Supp. at 446; *Ditlow v. Volpe,* 362 F.Supp. at 1324.

it directed the Court to follow this procedure on remand:

" * * * Thus, the district court should hold a hearing to determine whether the information involved here would have been exempt just as it would if a suit had been brought under the FOIA to compel disclosure. See 5 U.S.C. § 552(b)(3); *National Parks & Conservation Assn. v. Morton * * *.* In holding this hearing, the district court is not reviewing agency action; it is making a threshold determination whether the plaintiff has any cause of action at all." [57]

It went on to add that, on remand, the District Court should "consider 18 U.S.C.

**57.** 519 F.2d at 940–41, n. 4.

What the court is stating here is that, until it is determined that the information is within an exemption, the agency has no discretion to exercise and no basis for review under the APA. This is what it describes as the "threshold" question. This follows, since if the information is not exempt, the Act commands disclosure; but, if, on the other hand, the information is exempt, then the agency ordinarily has discretion, the exercise of which is reviewable under APA standards.

See, also, Note, 1976 *Duke L.J.* at 345, n. 73:

"The court of appeals in *Charles River*, however, directed the lower court on remand to hold an evidentiary hearing on the threshold question of whether the information is exempt under the FOIA."

**58.** 519 F.2d at 942–3.

As construed in *Pharmaceutical Mfrs. Ass'n v. Weinberger, supra,* 411 F.Supp. at 577–8, *Charles River Park,* in remanding the case, directed the District Court to follow "[a] three step process * * *: determination of whether the material fit within a FOIA exemption; consideration of the prohibitions of 18 U.S.C. § 1905; and (assuming the pertinence of a FOIA exemption and the inapplicability of 18 U.S.C. § 1905) examination of the agency's discretionary decision to release. 519 F.2d at 943. Such judicial review is under the Administrative Procedure Act and appropriate remedies include injunctive relief. 519 F.2d at 939, 941–42 & n. 6."

See, also, *Burroughs Corporation v. Schlesinger* (E.D.Va.1975), 403 F.Supp. 633 at 637, where Charles River Park was construed:

" * * * The Circuit Court for the District of Columbia has suggested that a District Court hold appropriate hearing whenever evidence is insufficient on the issue of substantial harm. *Charles River Park "A", Inc. v. H.U.D., supra,* 519 F.2d at 940, 943–944 (D.C. Cir.1975). This suggestion is well taken.

§ 1905 and determine whether the information sought falls within the specific prohibitions therein contained," previously stated as "co-extensive" with Exemption 4. And it added that, "[i]f it does, it would be an abuse of discretion for HUD to release the information" and "to ignore such a statutory mandate." It concluded by remanding the cause because "[a]n evidentiary hearing will be necessary since the present record is not sufficient to make the above determination." [58]

■ It follows that, were review here available under the APA, the procedure followed by the District Court was free of error.[59] But the District Court did not find

The defendants, in the meantime, shall remain enjoined from disclosing the Recap Table pending a final decision after such hearings are held."

**59.** We may add that, even when review is sought under the APA, the plea of sovereign immunity, as asserted by the defendants, will not be sustained. The defendants rely on *Littell v. Morton* (4th Cir. 1971), 445 F.2d 1207. Their reliance in this regard on *Littell v. Morton* is misplaced. It is true that in *Littell* we did not follow the lead of those cases which had found in the APA itself a waiver of sovereign immunity. But we took note of the increasing judicial distaste for the doctrine of sovereign immunity and the unanimous condemnation of the doctrine by academic commentators. We accordingly narrowed the doctrine in actual application within a very restricted compass, as established by its rational justification. We stated that, under the impetus of an increasing "weakening of general faith in the validity of the doctrine" its only remaining "rationale [for existence] boils down to substantial bothersome interference with the operation of government." *Ibid.,* at 1214.

This statement is not substantially different from that articulated by Professor Cramton in his notable article, *Nonstatutory Review of Federal Administrative Action: The Need for Statutory Reform of Sovereign Immunity, Subject Matter Jurisdiction, and Parties Defendant,* 68 *Mich.L.Rev.* 389 at 397 (1970):

" * * * The only rationale for the doctrine [of sovereign immunity] that is now regarded as respectable by courts and commentators alike is that official actions of the Government must be protected from undue judicial interference."

These suits, if sustained, will not interfere in the slightest with the performance by the Government or its agents under the Executive Order; any decree entered herein would not

jurisdiction under the APA in these cases; its jurisdictional base rested upon the general federal-question jurisdiction under § 1331.[60]

§ 1331 grants original jurisdiction to the District Court over any action that "arises under the Constitution, laws, or treaties of the United States." And we agree with the trial court that these cases meet the jurisdictional requirements of § 1331. The information, the disclosure of which the plaintiffs seek by their action to prevent, was filed under the compulsion of a valid Executive Order issued under federal authority; the disclosure of such information, it was alleged, is exempt from compelled disclosure under the terms of both subsections § 552(b)(3) and (4) of the FOIA and its disclosure is forbidden under § 1905, 18 U.S.C. On the basis of those allegations, the plaintiffs invoked the equitable jurisdiction of the federal court to secure an injunction against disclosure. Such jurisdiction, it would seem, would exist both as an action to enjoin the violation of the positive mandate of § 1905 by an executive officer and as an action implied under the very terms of Exemption 4 of the FOIA itself. Both such grounds would rest on a federal statute and qualify under § 1331.

It would be a violation of both logic and reason to find that an action by one who is faced with substantial competitive harm and injury by the threat of disclosure of information, submitted by him solely because of the compulsion of a federal Executive Order, validly issued under federal law by a federal agency, whose officers are forbidden by federal law to disclose such information (as does § 1905), is not an action arising "under the * * * laws, * * * of the United States." It has been well stated that "[i]t is an inherent power of the federal judiciary to enjoin * * * an act" sought to be carried out by a federal official in violation of federal law, and "[t]hat there be such [judicial] power was one of the prime compelling reasons for the creation of the judicial branch as an independent and equal branch of the Government." [61] And this power of a federal court to grant injunctive and declaratory relief under § 1331 against the threat of action by a public officer "in excess of [his] delegated powers and contrary to a specific [federal statutory] prohibition" such as § 1905, causing irreparable harm to a private person, has been repeatedly recognized and exercised.[62] The principle is plainly applicable in actions such

curtail the power of the Government to enforce the Executive Order. Actually, the Government itself has no real interest in these suits; the only parties that may suffer are the plaintiffs through the disclosure of confidential information harmful to their competitive position and the only parties to be benefitted, if the plea is sustained, are the private parties who for their own personal curiosity desire the information. *Littell* can accordingly give them no support; on the contrary, it is compelling authority against the validity of the plea. The editor in the Note, *supra*, 1976 *Duke L.J.* 358, concludes also that *Littell* would not bar a suit such as these reverse-FOIA cases.

**60.** *See, Burroughs Corporation v. Schlesinger, supra*, 403 F.Supp. at 634; *Chrysler Corp. v. Schlesinger, supra*, 412 F.Supp. at 174–5, and *Hughes Aircraft Company v. Schlesinger, supra*, 384 F.Supp. at 294.

**61.** *Fleming v. Moberly Milk Products Co.* (1947), 82 U.S.App.D.C. 16, 160 F.2d 259, 264, appeal dismissed, 331 U.S. 786, 67 S.Ct. 1304, 91 L.Ed. 1816 (1946).

**62.** *Leedom v. Kyne* (1958), 358 U.S. 184 at 188–90, 79 S.Ct. 180 at 183, 3 L.Ed.2d 210; *Borden, Inc. v. F. T. C.* (7th Cir. 1974), 495 F.2d 785, 787, ("the agency has clearly violated a right secured by statute or agency regulation"); *Elmo Division of Drive-X Company v. Dixon* (1965), 121 U.S.App.D.C. 113, 348 F.2d 342, 344–6.

*See, also, McQueary v. Laird* (10th Cir. 1971), 449 F.2d 608, 611, *Zirin v. McGinnes* (3d Cir. 1960), 282 F.2d 113, 115, *cert. denied*, 364 U.S. 921, 81 S.Ct. 286, 5 L.Ed.2d 260 (1960), and *Green v. Connally* (D.C. three-judge ct. 1971), 330 F.Supp. 1150, 1172, *aff'd. sub nom., Coit v. Green*, 404 U.S. 997, 92 S.Ct. 564, 30 L.Ed.2d 350 (1971).

In *McQueary*, the Court said:
"If a federal officer does or attempts to do acts which are in excess of his authority or under authority not validly conferred, equity has jurisdiction to restrain him."
*Green* is perhaps more forceful:
"The Federal courts have power to correct improper or inadequate action of Federal officials not only, as in the case of State officials, for failure to observe constitutional lim-

as these under review and affords federal subject-matter jurisdiction under § 1331(a).[63]

We accordingly have, as we have said, no difficulty in finding that the District Court had jurisdiction of these actions under § 1331 to enjoin an action by the defendants in violation of § 1905.

 Should, however, the contention of the defendants be accepted that § 1905 is inapplicable, the FOIA itself, it would seem, confers on a supplier of *private* information, an implied right to invoke the equity jurisdiction to enjoin the disclosure of information within Exemption 4. To understand this exemption and to determine its scope and application, we must look first to the legislative intent or purpose in enacting the FOIA itself. It is clear that the Act's basic purpose "was to protect the people's right to obtain information about their government, to know what their govern-

ment is doing and to obtain information about government activities and policies" and to remedy the "mischief" of "arbitrary and self-serving withholding, by agencies which are not directly responsible to the people, of official information on how the government is operating through the use of vague phraseology in Section 3 of the Administrative Procedure Act." [64] "One cannot, however, review the hearings and committee reports accompanying the FOIA without recognizing that Congress was also deeply concerned with protecting an individual's right of privacy and thus designed some of the exemptions to accommodate what it perceived to be legitimate private as well as governmental interests." [65] (Italics in text) In drafting the Act, Congress sought carefully to balance the right of the public to know what its government was doing against the rights of the individual to the privacy of private confidential informa-

its, but also for failure to act in consonance with pertinent Federal legislation."

**63.** The District Court found the presence of the jurisdictional amount under § 1331 and the defendants have not contested this finding of jurisdictional amount.

**64.** Note, *A Review of the Fourth Exemption of the Freedom of Information Act*, 9 *Akron L.Rev.* 673, 694 (1976). The full text on this point is:

"One factor which seems to have received little attention in analyzing the purpose of Exemption 4 is that the mischief which Congress was attempting to remedy was the arbitrary and self-serving withholding, by agencies which are not directly responsible to the people, of official information on how the government is operating through the use of vague phraseology in Section 3 of the Administrative Procedure Act. The purpose of the Freedom of Information Act was to protect the people's right to obtain information about their government, to know what their government is doing, and to obtain information about government activities and policies. The Freedom of Information Act was not enacted for the purpose of enabling the public to obtain information about individuals and corporations, about what those individuals and corporations are doing, or about what their activities and policies are.

"Disclosure of any information which corporations have traditionally kept secret for valid competitive reasons strikes at the heart of the free enterprise system and was un-

doubtedly what Congress intended to guard against when, in expressing the purpose of Exemption 4, it stated:

" 'This exception is necessary to protect the confidentiality of information . . . which would customarily not be released to the public by the person from whom it was obtained.' "

**65.** The full text of this part of the Note in 1975 *Duke L.J.* at 431–2, is as follows:

"One cannot, however, review the hearings and committee reports accompanying the FOIA without recognizing that Congress was also deeply concerned with protecting an individual's right of privacy and thus designed some of the exemptions to accomodate what it perceived to be legitimate *private* as well as governmental interests. Tests devised by courts interpreting the exemptions dealing with privately submitted material to determine whether certain information can be withheld under those exemptions have incorporated this desire to protect legitimate private interests, probably with the expectation that an agency will respect such interests and assert the exemption for their protection. * * * *Where the exemption was intended to protect the asserted private interest, an agency should respect the desire of the person submitting the information, and a court, consistent with the overall policy of the FOIA, may order the agency to withhold that information.*" (Italics added)

tion [66] and to make clear the distinction between the right of the public to information and the right of the individuals to protection from disclosure of certain confidential private information. In summary, the Act was intended, to use the language of the Senate report, to set "up workable standards for what records should and should *not* be open to public inspection." [67] (Emphasis added) And one of the sections of the Act, which declared what private information acquired by the government "should *not* be open to public disclosure" was Exemption 4. That exemption declared that "commercial or financial information obtained from any person and privileged or confidential" should "*not* be open to disclosure." And, as we have already seen, the term "confidential," as used in the statute, covers information, the release of which would "cause substantial harm to the competitive position of the person from whom the information was obtained." [68] The protection from disclosure given such information by Exemption 4 was stated in the legislative hearings to have been granted to such information "*not only as a matter of fairness, but as a matter of right,* and as a matter basic to our free enterprise system." [69] (Italics added) In enacting such exemption, the Congress had balanced the right to public disclosure against the right of the private party to protection and had opted for the right to privacy in favor of the private interest. [70] This provision in the Act was more than a simple exemption; it represented an express affirmation of a

legislative policy favoring confidentiality of *private* information furnished government agencies, the disclosure of which might be harmful to *private* interests. It was manifestly intended to protect that private interest. And when a statute, whether phrased in the form of an exemption or not, grants a private party protection from disclosure, it carries with it an implied right in the private party to invoke the equity powers of a court to assure him that protection. It matters not that the statute does not in express terms accord him that right. *Bannercraft,* as we have seen, disposed of the contrary argument by declaring that, in addition to the express grant of jurisdiction in the Act itself, there was available to any proper party the right to invoke the broad general jurisdiction of equity in the assertion of a right under the Act. And this would cover the right of the private party seeking the protection given by Exemption 4. The Court said as much in *National Parks and Conservation Ass'n v. Morton, supra,* 498 F.2d at 770. It declared that "[t]he exemption [*i. e.,* Exemption 4] may be invoked for the benefit of the person who has provided commercial or financial information if it can be shown that public disclosure is likely to cause substantial harm to his competitive position." [71] The Court in *Sears, Roebuck & Co. v. General Services Adm'n.* (D.C.D.1974), 384 F.Supp. 996, 1001, echoed the same thought, putting it that "[a] decision to release information is no less susceptible to court review than a decision to deny disclosure." *Sears* was re-

---

**66.** *See,* S.Rep. 813, 89th Cong., 1st Sess. (1965): "The committee feels that this bill, as amended, would establish a much-needed policy of disclosure, while balancing the necessary interest of confidentiality."

**67.** S.Rep.No.813, 89th Cong., 2d Sess. at p. 5 (1965).

**68.** *See* 498 F.2d at 770.

**69.** 498 F.2d at pp. 767–69, quoting from the Senate hearings.

**70.** The author in 70 *Nw.U.L.Rev.* at 1017 is somewhat more limited in his approach. Under his construction of the Act and its policies, an agency, if it chose to disclose material falling within Exemption 4, would be under a

"burden * * * to demonstrate that the public interest requires disclosure of an individual's confidential information," and "absent a strong, countervailing public need to know," injunctive relief against disclosure is appropriate. The defendants made no such showing in this case. In fact, they made no real defense in *Westinghouse, see* 9 *Akron L.R.* at 683, and certainly not on this ground in the other cases. Even if the courts may engage in a balancing of interests, despite the prior balancing by Congress, there was no basis for such balancing in this case, as we later indicate.

**71.** *See, Neal-Cooper Grain Company v. Kissinger, supra,* 385 F.Supp. at 775, as quoted *supra,* n. 41.

versed in part and affirmed in part in 509 F.2d 527, but in so doing the Court of Appeals' decision has been construed as holding "*that a person submitting information to the government can invoke the FOIA exemptions to enforce nondisclosure of exempt material.*" [72] (Italics added)

■ And the idea that the supplier of private information which may fall within Exemption 4 is entitled to seek independent judicial protection under the federal-question jurisdiction statute is approved generally by the legal commentators. Thus, in a recent Note in 70 *Northwestern L.Rev.* 995 (1976), titled "*Reverse-Freedom of Information Act Suits: Confidential Information in Search of Protection,*" the author states (pp. 998–9):

"Although *National Parks* demonstrated a clear congressional intent to exclude confidential business materials submitted to a Government agency from the disclosure requirements of the FOIA, it is not clear *who* was intended to enforce that right, the agency or the individual whose materials may be disclosed. Several reasons exist for preferring private civil actions over agency enforcement. First, from the perspective of an individual required to submit information to the Government, the agencies cannot always be relied upon to protect adequately the confidentiality of that information. One commentator has stated: [O'Reilly, *Government Disclosure of Private Secrets Under the Freedom of Information Act,* 30 *Bus.Lawyer* 1125, 1134 (1975)]

'Counsel for the agency, prime target of the disclosure-oriented FOIA has lit-

tle or no incentive to protect the secrets of the business community. Exemption (4) [trade secrets and commercial or financial information] does not require confidentiality but leaves the burden on the agency to assert it. It may be bad for appearances in a period of "openness" and "honesty" for an agency to refuse disclosure from its files.'

"Moreover, the individual is more aware than the agency of the potential competitive harm he will suffer should information be released. Self-representation theoretically insures the plaintiff of both zeal and expertise in the advancement of his claim of confidentiality. Finally, an individual seeking to prevent disclosure may find his administrative remedies either nonexistent or inadequate. Virtually all agency regulations implementing the FOIA provide administrative appeal procedures for a decision to withhold information. However, virtually no agency has established appeal procedures for a decision to disclose information.

"Therefore, absent the availability of reverse-injunctive suits, individuals would be unable to prevent effectively the economic injury to their businesses that could result from the release of trade information to a competitor. Such a check on agency action, it should be noted, is consistent with the FOIA's attempt to balance the goal of agency disclosure against the need to combat administrative arbitrariness and to protect certain rights of privacy and confidentiality." [73]

---

**72.** Note, 1975 *Duke L.J.* at 429, n. 60.

**73.** In this same article, the author, in developing the principle under which a supplier may directly challenge a decision to disclose exempt material, basing federal jurisdiction under § 1331 on the FOIA itself, said (p. 1011):

"It seems clear, therefore, that the FOIA does not automatically require relief for the reverse-FOIA plaintiff, because the Act does not forbid disclosure of exempted materials. Thus, relief must be predicated upon an indirect application of the FOIA in light of the policies underlying the Act and its exemptions. If a particular disclosure would be

contrary to a policy of the Act, a court may properly find that an agency 'abused its discretion' in deciding to release the information—an approach coupling the policy considerations of the FOIA with the remedial provisions of the APA."

And then to make it clear, he is referring primarily to Exemption 4, the author adds in footnote 92:

"* * * For the policies, especially in a fourth exemption confidentiality question, may lead a court to conclude that a particular disclosure constitutes an abuse of agency discretion and therefore may be enjoined."

The same thought was set forth in the Note in 1975 *Duke L.J.* at 431–2:

"* * * Where the exemption was intended to protect the asserted private interest, (which, we interpolate, was the obvious purpose of Exemption 4) an agency should respect the desire of the person submitting the information, and a court, consistent with the overall policy of the FOIA, may order the agency to withhold that information."

Actually, there seems to be no real dispute over the right of the private party to be protected from the disclosure of private confidential information qualifying under Exemption 4. The only issue is, as the writer of the article in *Northwestern Law Review* suggests, whether it is the agency or the private party who may invoke it. The writer of the Note in *Duke Law Journal*, just quoted, goes further and states that the "agency should respect the desire of the person submitting the information," and when the supplier claims the exemption, the agency should refuse disclosure. This suggestion seems to have been in the mind of the writer of the Note in 41 *University of Chicago Law Review* at 574, when he indicated that the agency should respect the claim to confidentiality under the exemption, thereby precipitating an action by the requestor, whereupon the supplier of the information could intervene in that action and secure a *de novo* trial on the confidentiality of the information under the

Act. This, to say the least, is the circuitous way of protecting the rights of the supplier of the information. Moreover, there is always the real risk that the agency itself will be delinquent in asserting the rights of the private party. After all, it could not care less about protecting the competitive position of a supplier of information. That is no part of its responsibility. Neither does it have, as has already been observed, in most instances, sufficient knowledge to assert properly the private party's right to confidentiality. And it must not be forgotten that the protection of a competitive position is both a valuable and often complex matter, dependent upon full proof,[74] and one "basic to our free enterprise system." Should not the person who is threatened with harm through a disclosure, which the Congress has indicated clearly is against the public policy as expressed in the FOIA itself, be the proper one to assert that right to protection from disclosure assured him under Exemption 4, in an equity action in which he can have a *de novo* trial? The envious competitor or the curious busybody demanding access to that private information has the right to such a *de novo* trial. The Act gives it to him. But is not the same right to be implied, when the supplier, with a right that Congress gave him "not only as a matter of fairness but as a matter of right," seeks what may be regarded as correlative relief? This right was given him in *Charles River Park*, though incident to an APA review.[75] That it qualifies un-

---

74. In 9 *Akron L.Rev.* at 683–4, the writer states:

"* * * Although there may be instances in our highly regulated economic system when basic economic principles no longer effectively operate, the industrial sector is still highly competitive. Corporations have varying numbers of market and financial specialists who continually search out fragments of information about competitors and markets from any available source; published government statistics and information, various legislative documents, analyses and surveys performed by consultants, field surveys performed by corporate specialists, information continually obtained and reported by sales personnel, or disclosures by government agencies. Since government-derived information is often submitted according to statutory or regulatory requirement, it is usu-

ally more credible than information from other sources; the latter usually depends on what a company decides, for its own carefully considered reasons, to make available.· An additional reliable 'fragment' of information may be enough to bring the whole picture into much clearer focus and could conceivably mean the difference between success or failure in certain contract bidding situations. The importance of a court's decision on disclosure in any given case is magnified by the fact that a number of jobs and possibly the future of a business may hinge on obtaining a given contract, depending on the industry involved and a number of other factors."

75. 519 F.2d at 940, n. 4:

"* * * Thus, the district court should hold a hearing to determine whether the information involved here would have been ex-

der statutory federal-question jurisdiction is the conclusion of the writers of the Notes in 1976 *Duke Law Journal* at 351–2 and in 70 *Northwestern Law Review* at 1008. In the latter Note, the editor states:

"Although no clear test for deciding whether an action 'arises under' federal law has been developed, it can safely be said that a substantial claim based on an interpretation of a federal statute is sufficient to satisfy the arising under requirement. *In a reverse-FOIA suit, the plaintiff's claim for relief requires a determination of what commercial and financial information is confidential within the meaning of section 552(b)(4). Thus, it seems clear that such an action arises under federal law for purposes of statutory federal question jurisdiction.*" (Italics added)

We agree. In our opinion, federal-question jurisdiction does exist for an implied action by the private party to protect his right to protection from disclosure, stated as a general over-all legislative policy in Exemption 4 of the FOIA.

▬▬▬ Nor would the plea of sovereign immunity, so earnestly argued by the defendants, be any more available, where jurisdiction is invoked under § 1331, than it would be in an APA suit, to which we have already adverted.[76] It has been long accepted that an action to enjoin a federal official from doing an act beyond his statutory power or authority—the situation here where the threatened disclosure is alleged to be violative of the prohibition imposed upon the defendants both by § 1905 and by Department regulations—and violative of a right of privacy granted under Exemption 4 of the FOIA—represents an exception to the application of the plea of sovereign immunity. This was made clear in *Larson v. Domestic & Foreign Corp.* (1949), 337 U.S. 682, 689, 69 S.Ct. 1457, 1461, 93 L.Ed.

1628, *reh. denied*, 338 U.S. 840, 70 S.Ct. 31, 94 L.Ed. 514 (1949), in which the Court said that, "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. * * * His actions are ultra vires his authority and therefore may be made the object of specific relief." [77] This exception to the right of sovereign immunity has been often applied. Indeed, in *Ragland v. Mueller* (5th Cir. 1972), 460 F.2d 1196, 1197, a plea of sovereign immunity in a case for injunctive relief against proposed official action in violation of law was dismissed as "border[ing] on the frivolous." And in *De Masters v. Arend* (9th Cir. 1963), 313 F.2d 79, 85, *appeal dismissed*, 375 U.S. 936, 84 S.Ct. 341, 11 L.Ed.2d 269 (1963), the Court said:

"* * * However, if appellants were indeed prohibited by Section 7605(b) or the Fourth Amendment from initiating this inquiry, a suit to restrain their unlawful conduct would not be barred by the doctrine of sovereign immunity."

Recent cases to the same effect are *Eastern Kentucky Welfare Rights Org. v. Simon* (1974), 165 U.S.App.D.C. 239, 506 F.2d 1278, 1282, *cert. granted*, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (1975); *Bowers v. Campbell* (9th Cir. 1974), 505 F.2d 1155, 1158; *State Highway Commission of Missouri v. Volpe* (8th Cir. 1973), 479 F.2d 1099, 1123. And other courts have specifically held that the doctrine was inapplicable where an agency or officer was proposing to take action illegal under any statute prohibiting disclosure of information exempt under FOIA.[78]

▬▬▬ Since these actions find their jurisdiction properly based on § 1331 and since the doctrine of sovereign immunity is not applicable, the District Court properly received evidence, even though the evidence was largely expert testimony calculated to

---

empt just as it would if a suit had been brought under the FOIA to compel disclosure."

76. See note 59, *supra.*

77. *See* Cramton, 68 *Mich.L.Rev.* at p. 404.

78. *Charles River Park "A", Inc. v. Department of H. & U.D., supra*, 519 F.2d at 941, n. 7; *Sears, Roebuck & Co. v. General Services Admin., supra*, 509 F.2d at 529 and *Neal-Cooper Grain Company v. Kissinger, supra*, 385 F.Supp. at 776.

inform the court of the nature of the information so the court could better determine whether it fell within the statutory definition of Exemption 4 and the statutory language of § 1905. This was specifically held in *Sears, Roebuck and Co. v. General Services Admin., supra*, 402 F.Supp. at 382–3. In that case, the issue was "the standard to be applied by this Court in its review of the agency's decision" to disclose. The court stated that all parties agreed that the FOIA directed a *de novo* review where the agency's decision not to disclose was challenged. It recognized that if review were being had under the APA, the agency's decision could only be reviewed on the ground of whether it was "arbitrary and capricious." "But" it declared, "since Sears has filed a valid declaratory judgment action on whether any of the documents are exempt under the FOIA, this Court will apply the *de novo* standard mandated by the Information Act" for resolving the issue whether the information is exempt. Actually, this is substantially the same procedure approved by *Charles River Park* for proceedings in this regard under the APA, as we have seen.[79] It would be an incredible rule that a legislative prohibition such as § 1905, fixing limits on executive action for the benefit of the plaintiffs, is to be construed and applied by the executive, with only a right of review for arbitrariness on the part of those for whose benefit the statutes were enacted. This would be tantamount to committing the execution of such law to "the self-restraint of the executive branch" itself, see *Fleming v. Moberly Milk Products Co., supra*, 160 F.2d at 265, and making the executive's *ipse dixit* final, see *Weisberg v. Department of Justice, supra*, 489 F.2d at 1202. It would be grossly unfair, as we have already said, to force the supplier of information which carries some indicia of confidentiality under both § 1905 and Exemption 4, to rely wholly on the agency.

Such a ruling limiting the supplier to a challenge of arbitrariness alone against the agency's decision to disclose would be contrary to the whole thrust of the FOIA, since "because the FOIA was enacted expressly to combat administrative arbitrariness, Congress clearly did not intend to commit the disclosure decision totally to agency discretion;" and this was stated to be true in the reverse-FOIA case.[80] The supplier, if his claim to protection is as *Morton* declared a "matter of right," is entitled to a fair and adequate hearing, on proper evidence, in the courts, a hearing that is no less broad and adequate than that given the merely curious who may seek disclosure. To repeat, when the issue is whether certain information is without a prohibition of disclosure, whether because "confidential" within both § 1905 and Exemption 4 or because of national security privilege, it is for the court itself to determine "whether the circumstances are appropriate for the claim" and not the executive department concerned and "the courts must be satisfied from all the evidence and circumstances," that the information is within or without the prohibition or privilege. This is so, because "[j]udicial control over the evidence in [such] a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds* (1953), 345 U.S. 1, at 8–10, 73 S.Ct. 528, 533, 97 L.Ed. 727.[81]

Nor can the defendants fault the findings of fact as made by the District Court to the effect that the information ordered not to be disclosed qualified as "confidentially" exempt under Exemption 4 and within the prohibition of § 1905. In fact, they make no assault in their briefs in this Court on the District Court's factual findings. Nor would it be easy for them to do so. It is in the record of the trial of the consolidated cases that the defendants conceded that in the earlier *Westinghouse Case* the District

---

**79.** *See* 1976 *Duke L.J.* at 334, n. 18:

"In *Charles River Park 'A', Inc. v. HUD*, 519 F.2d 935 (D.C.Cir.1975), it was determined that the scope of the court's inquiry on the issue of whether the information is within an exemption should be that of de novo review."

**80.** 70 *Nw.U.L.R.* at 1004.

**81.** This case was cited with approval to this point in *Nixon v. United States* (1974), 418 U.S. 683, 715, 94 S.Ct. 3090, 41 L.Ed.2d 1039.

Court had properly determined the confidentiality issue "[o]n the evidence he had before him." And the defendants have otherwise conceded that some of the material in the reports in question was exempt from disclosure under Exemption 4 and they refused to disclose for that reason. They reaffirmed this in *Robertson v. Department of Defense* (D.C.D.1975), 402 F.Supp. 1342, 1345, where in an action involving similar reports filed by the plaintiff General Motors, the Court stated the defendants "have taken the position that certain portions of the documents are confidential commercial or financial data which, if released, could injure GM's competitive position and are exempt from disclosure under the fourth exemption. Other portions would be disclosed were it not for the Virginia injunction. These defendants have not taken any position on the two motions presently before the Court—that of GM for summary judgment and Robertson for partial summary judgment." It is true that the District Court extended protection beyond that agreed upon by the defendants but, in so doing, the District Court was making a finding of fact, based on an *in camera* examination of the reports, and the defendants offer no reason to suggest that such a finding was erroneous on the record before the District Court. After all, the factual issue is complex and is a matter that must be left to the informed judgment of the District Court. We, therefore, find no error in the procedure followed in these cases by the District Court, or the result reached, and this would be true whether jurisdiction was being exercised under the APA or under § 1331.[82]

We accordingly affirm the grant of injunctive relief in favor of the plaintiffs and sustain the denial of declaratory relief as provided in the judgments of the District Court, for the reasons stated herein.

The decisions of the District Court in the three cases therefore are

*AFFIRMED.*

---

**82.** In the Note in 1975 *Duke L.J.* at 432, n. 72, the author states:

"* * * The weakness in the *Westinghouse* and *United States Steel* opinions is in their implication that exemptions compel the withholding of all information which would qualify as exempt, regardless of a request by a private party for nondisclosure."

This statement is somewhat inexplicable, since the plaintiffs did object both administratively and by the institution of these actions.